THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
FELIX BROGE *et al.*, Defendants-Appellants.

First District (5th Division)   No. 85—1976

Opinion filed July 31, 1987.

James J. Doherty, Public Defender, of Chicago (Andrea Monsees, Assistant Public Defender, of counsel) for appellants.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Kenneth T. McCurry, and Jonathan S. Solovy, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PINCHAM delivered the opinion of the court:

After a bench trial the defendants, Felix Broge and Antonio Gainza, were found guilty of unlawful possession of a controlled substance. (Ill. Rev. Stat. 1985, ch. 56½, par. 1402.) Gainza was sentenced to two years' imprisonment and Broge was sentenced to 30 months' probation. Both appeal contending, *inter alia*, that the trial court erred in overruling their motion to suppress because the controlled substance was seized from Gainza's apartment by the officers without a warrant. We reverse.

The evidence presented at the hearing of the defendants' motion to suppress established that 4416 North Racine Avenue, Chicago, was a three-story multiunit apartment building with seven or eight apartments on each floor. The defendant Antonio Gainza resided in the third-floor south apartment. Only two or three of the apartments on the third floor were occupied. The building manager, Filipe Hidalgo, resided in one of them and perhaps another tenant resided in another. The defendant Felix Broge lived across the street but spent the night of October 11, 1984, with Gainza in Gainza's apartment.

Preparatory to retiring for the night, Gainza and Broge closed and locked the expandable metal burglar gates that secured the wooden entrance door to the apartment. Broge went to sleep on the bed near the door. Gainza went to sleep on the couch at about 10:30 p.m.

Chicago police officer Steven Joyce testified that at approximately 11:30 on the evening of October 11, 1984, he and his partners, Officers Kolgani and Townsend, set up a surveillance in the rear of 4416 North Racine. Joyce testified, "[t]here is quite a bit of narcotic activities in the building itself," and that within the two months prior to October 11, 1984, he and his partners placed individuals under arrest five or six times for possession of a controlled substance.

The defense attorney objected to this testimony on the ground that it "was not relevant to this search" and requested that the testimony be stricken. The trial court asked the prosecuting attorney, "How is it relevant?" The prosecuting attorney answered, "What's at issue, [is] the reasonableness of the officer's conduct based on what

his personal knowledge is and experience in going to this building on that date at that time." The trial court did not rule on the defense attorney's objection or on his motion to strike the testimony.

Officers Kolgani and Townsend, Officer Joyce's partners, did not testify at the hearing of the defendants' motion to suppress and Joyce did not name or otherwise identify the individuals that he and his partners arrested five or six times within the two months before October 11, 1984. Nor did Joyce testify whether the individuals lived in the building, or on what floor or in which apartment the arrests occurred, or whether the unlawful controlled substance was in the possession of the individuals arrested or whether such a substance was in the building when the persons were arrested. Moreover, Joyce did not testify to the disposition of the possession of controlled substance charges against these individuals.

Joyce testified that after surveilling the rear of the premises for about 15 or 20 minutes he and his partners observed a couple of females, who were "known prostitutes," come out the back door of the building at about 11:15 that night and that he stopped and spoke to them.

Significantly, Joyce was not asked by the prosecuting attorney on direct examination the names of the two females, and Joyce by his answers and the prosecuting attorney by his questions made no effort to otherwise identify the two females. On cross-examination, however, Joyce testified, for the first time, that the names of the two females were Debbie Hansen and Mary Bateman. But when confronted on further cross-examination with his police report, Joyce admitted that he did not put the names of the two females therein.

Joyce testified that the two females told him and his partners that they had just purchased cocaine for $20 from two males on the third floor south, the apartment with the gates at the entrance door. No cocaine was obtained by the officers from the two females. Joyce testified that they stated that "they shot the cocaine up upstairs." The officers did not place the two females under arrest or take them into custody. Instead, the officers told them to leave and they did so.

The State did not contend in the trial court that on these bare assertions, the officers had probable cause to arrest anyone and the trial court did not so find. Before this court, however, the State contends for the first time that on this sparse information the officers had probable cause to make an arrest, but the State does not designate of whom.

Before this court the State relies principally on *People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147. That reliance is misplaced.

The facts in *Tisler* and the extensive facts on which the officer relied to establish probable cause in *Tisler* (103 Ill. 2d 226, 231-34, 469 N.E.2d 147) are not remotely analogous to the meager facts in the case at bar. The following language of *Tisler*, however, is most intrusive in the case at bar:

"The fourth amendment to the United States Constitution guarantees the right to be free from unreasonable search and seizure. The amendment specifies that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' (U.S. Const., amend. IV.) With respect to unreasonable search and seizure, as well as to the issuance of warrants, the language of the 1970 Illinois Constitution is nearly identical to that of the Federal guarantee. Ill. Const. 1970, art. I, sec. 6.

In reference to Federal and State warrant requirements, this court has explained that a detached judicial officer must resolve the question of whether probable cause exists to justify issuing a warrant. The decision is to be based on information contained in sworn statements or affidavits that are presented to the magistrate. (*People v. Greer* (1981), 87 Ill. 2d 89, 92.) Whether probable cause exists in a particular case turns on the 'totality of the circumstances and facts known to the officers and court when the warrant is applied for.' * * *

*When a police officer has proceeded without a warrant to search, seize evidence, or arrest a person, the trial court making a probable-cause determination is to apply standards at least as stringent as those that guide a magistrate in deciding whether to issue a warrant.* (*People v. Johnson* (1983), 94 Ill. 2d 148, 153.) The Code of Criminal Procedure of 1963 allows a warrantless arrest only when a peace officer 'has reasonable grounds to believe that the person is committing or has committed an offense.' (Ill. Rev. Stat. 1983, ch. 38, par. 107—2(1)(c).) As used in the statute, 'reasonable grounds' is considered to have the same substantive meaning as 'probable cause.' *People v. Wright* (1974), 56 Ill. 2d 523, 528-29, quoting *Brinegar v. United States* (1949), 338 U.S. 160, 175-76, 93 L. Ed. 2d 1879, 1890, 69 S. Ct. 1302, 1310-11.

To determine whether a warrantless arrest meets the reasonable-grounds/probable-cause requirement, the trial court must decide whether 'a reasonable and prudent man, having the knowledge possessed by the officer at the time of the ar-

rest, would believe the defendant committed the offense.' " (Emphasis added.) 103 Ill. 2d 226, 235-37, 469 N.E.2d 147.

Following the supreme court's directive in *Tisler* to apply standards at least as stringent as those that guide a magistrate in deciding whether to issue a warrant in determining whether probable cause existed for a police officer to search, seize evidence or make an arrest without a warrant, both parties before this court rely on *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, as authority for their respective positions that probable cause did or did not exist for Joyce and his partners to make an arrest.

In *Gates*, the Illinois appellate and supreme courts held that the contents of an anonymous letter and the factual assertions in an affidavit were insufficient to establish probable cause for the issuance of a search warrant under the authorities of *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584. Those courts concluded that the letter and affidavit failed to satisfy the "two pronged test" of disclosing (1) the informant's basis of knowledge and (2) sufficient facts to establish the informant's veracity or the reliability of the informant's information. The Supreme Court in *Gates* abandoned the *Aguilar-Spinelli* "two pronged test" for determining whether an informant's tip established probable cause for the issuance of a warrant. The Supreme Court adopted instead the "totality of the circumstance" approach in making a probable cause determination. The Supreme Court held that an informant's reliability, veracity and the basis for his knowledge were highly relevant and probative in the "totality of the circumstances" probable cause determination, but that they were not the exclusive factors to be rigidly exacted in every case. The Supreme Court stated that under the "totality of the circumstances" approach, the content of the anonymous letter and the factual assertions in the affidavit provided the judge who issued the warrant a substantial basis for concluding that probable cause existed to search the defendant's home and car. In reversing, the Supreme Court stated:

"[A] conscientious assessment of the basis for crediting such tips is required by the Fourth Amendment * * *.

* * * [W]e reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable cause determinations. [Citations.] The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying

hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for *** conclud[ing]' that probable cause existed. ***.

*** An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause ***. *** Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." *Illinois v. Gates* (1983), 462 U.S. 213, 238-39, 76 L. Ed. 2d 527, 548-49, 103 S. Ct. 2317, 2332-33.

■ Pursuant to the Supreme Court's directive in *Gates* that the duty of a reviewing court is to ensure that the officers have a substantial basis for its conclusion that probable cause existed to make an arrest and pursuant to this court's duty to conscientiously review the sufficiency of probable cause on which arrests are made, we conclude from the totality of the circumstances that Officer Joyce and his partners lacked probable cause to arrest anyone.

No effort was made by Officer Joyce or his partners to confirm the prostitutes' story that they had purchased cocaine for $20 from two males in the third-floor south apartment with the burglar gate entrance. There was no evidence presented that either of the women had needlemarks from narcotic injections or that they were narcotic addicts or were or appeared to have been under the influence of drugs or that the officers knew or even suspected them to be drug users. There was no evidence that the officers searched or cursorily examined them for needlemarks, hypodermic syringes, needles or other narcotic paraphernalia. No evidence was presented that either of the two females had ever been charged with any narcotics offense or any other offense or that either of them had ever been arrested.

There was no evidence that the two females refused or were reluctant to answer questions asked them by the officers. Yet, there is no evidence that the officers obtained or that they made any attempt to obtain the names, identity or any descriptions of the two men who purportedly sold them the drugs. There was no evidence that the two alleged sellers resided in the apartment, or whether they were visitors, guests, or uninvited strangers therein. There was no evidence of whether anyone else was present in the apartment at the time of the

alleged sale, whether the two claimed sellers left the apartment after the sale, or whether the two men remained in the apartment after the two females purportedly departed. Nor was any evidence presented that there were additional drugs remaining in the apartment or in the possession of the two males when the two women left.

No attempt was made by the prosecuting attorney to establish that the two females were reliable or credible or that either of them were or had been police informants. From this and the subsequent events hereinafter set forth, it is apparent that the prosecuting attorney did not rely on the officers' encounter and conversation with the two females as legal justification for the officers' entry into the building or their arrest of the defendants therein.

Not a single question was asked Officer Joyce by the prosecuting attorney on direct examination to establish the reliability or credibility of either of the two prostitutes. It was the defense attorney who, on cross-examination, elicited from Officer Joyce the names of the two prostitutes—Debbie Hansen and Mary Bateman—whose names Joyce had omitted from his police reports. Similarly, it was on cross-examination that Officer Joyce for the first time volunteered, and not in response to a question, that the two females "stated that they shot the cocaine up upstairs." It was also on cross-examination by defense counsel that Officer Joyce first testified that he had previously used one of the prostitutes as an informant. When asked by defense counsel, "How many times?" Officer Joyce responded, "I don't recall at this time." This line of inquiry by the defense attorney and Joyce's testimony in response thereto did not prompt the prosecuting attorney to endeavor, by further inquiry of Joyce, to establish the prostitutes' reliability or credibility. The prosecuting attorney did not ask Joyce a single question on re-direct examination. Apparently he was satisfied to allow the reliability and credibility of the prostitutes to remain unproven inasmuch as he was not relying on their statement to the officers to establish probable cause for the officers to make an arrest.

The supreme court pointed out in *People v. Tisler* (1984), 103 Ill. 2d 226, 240, 469 N.E.2d 147, that "[t]he *Gates* court reaffirmed its concern that the informant be trustworthy." "The *Gates* court also reaffirmed other methods established in its prior opinions for evaluating a tip. The court again emphasized the value of independent police investigation that corroborates the details of an informant's story." (103 Ill. 2d 226, 238, 469 N.E.2d 147.) In the case at bar, not only was there no evidence that the prostitute-informants were trustworthy, there was likewise no evidence of any independent police investigation

that corroborated the details of their story.

The facts on which the Federal agents relied for probable cause in *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407, are similar to the facts in the case at bar. In *Wong Sun*, Federal narcotic agents had had Hom Way under surveillance for six weeks, arrested him and found narcotics in his possession. Hom Way told the agents that he had bought the narcotics the night before from Blackie Toy, a proprietor of a laundry on Leavenworth Street. The agents went to a laundry on Leavenworth Street operated by the defendant, James Way Toy. When an agent knocked on the laundry door, Toy appeared and opened the door, but when the agent announced his office Toy immediately slammed the door shut and fled down the hallway. The agents immediately thereafter discovered narcotics in the premises. In holding that on these facts probable cause did not exist for the agents to make an arrest, the Supreme Court stated:

> "The Court of Appeals found there was neither reasonable grounds nor probable cause for Toy's arrest. Giving due weight to that finding, we think it is amply justified by the facts clearly shown on this record. It is basic that an arrest with or without a warrant must stand upon firmer ground than mere suspicion, ***. *** The history of the use, and not infrequent abuse, of the power to arrest cautions that a relaxation of the fundamental requirements of probable cause would 'leave law-abiding citizens at the mercy of the officers' whim or caprice.' *Brinegar v. United States*, 388 U.S. 160, 176, 93 L. Ed. 1879, 1890, 69 S. Ct. 1302.
>
> Whether or not the requirements of reliability and particularity of the information on which an officer may act are more stringent where an arrest warrant is absent, they surely cannot be less stringent than where an arrest warrant is obtained. Otherwise, a principal incentive now existing for the procurement of arrest warrants would be destroyed. The threshold question in this case, therefore, is whether the officers could, on the information which impelled them to act, have procured a warrant for the arrest of Toy. We think that no warrant would have issued on evidence then available.
>
> The narcotics agents had no basis in experience for confidence in the reliability of Hom Way's information; he had never before given information. And yet they acted upon his imprecise suggestion that a person described only as 'Blackie Toy,' the proprietor of a laundry somewhere on Leavenworth Street,

had sold one ounce of heroin. \*\*\*

It is conceded that the officers made no attempt to obtain a warrant for Toy's arrest. The simple fact is that on the sparse information at the officers' command, no arrest warrant could have issued consistently with Rules 3 and 4 of the Federal Rules of Criminal Procedure. *Giordenello v. United States*, 357 U.S. 480, 486, 2 L. Ed. 2d 1503, 1509, 78 S. Ct. 1245. The arrest warrant procedure serves to insure that the deliberate, impartial judgment of a judicial officer will be interposed between the citizen and the police, to assess the weight and credibility of the information which the complaining officer adduces as probable cause. Cf. *Jones v. United States*, 362 U.S. 257, 270, 4 L. Ed. 2d 697, 707, 80 S. Ct. 725, 78 A.L.R.2d 233. To hold that an officer may act in his own, unchecked discretion upon information too vague and from too untested a source to permit a judicial officer to accept it as probable cause for an arrest warrant, would subvert this fundamental policy." *Wong Sun v. United States* (1963), 371 U.S. 471, 479-82, 9 L. Ed. 2d 444, 450-52, 83 S. Ct. 407, 413-14.

The simple fact is that on the sparse information at the officers' command in the case at bar, no valid arrest warrant could have issued. The officers in the case at bar were not authorized to act on their own, unchecked discretion upon the information they had, which information was too vague and was from too untested a source to accept as probable cause for an arrest.

Officer Joyce testified on direct examination at the suppression hearing that the 4416 North Racine apartment building was abandoned and that all the utilities were shut off. Yet Joyce testified on cross-examination that he and his partners entered the building and spoke to the manager of the building. Joyce testified on cross-examination:

"Q. You see a man who you have known from before who you say is alleged to be the manager of the building; isn't that correct?

A. Correct.

Q. You have seen him in that building before?

A. Yes.

Q. He told you [that] he's the manager of the building before?

A. Yes.

Q. I take it from your testimony you don't believe he's the manager?

A. I believe him to be manager.

* * *

Q. You took him at his word that he's in fact the manager?

A. Yes.

Q. When you saw him in the building, you knew him to be the manager and you knew him to live in that building?

A. Yes.

Q. So there is a manager living in the building?

A. He stated he was taking care of the building.

Q. Where was he when you ran into him, the third-floor?

A. Correct.

Q. Was he in an apartment?

A. I don't recall.

Q. Well, did you see an apartment that he was living in that was furnished?

A. He came out of that apartment, yes."

The name of the building manager was Filipe Hidalgo. Officer Joyce testified that Hidalgo accompanied Joyce and his two partners, Officers Kolgani and Townsend, to another third-floor apartment which had a locked metal folding gate in front of the wooden entrance door. At this juncture there is a sharp conflict between the testimony of Officer Joyce and Filipe Hidalgo, the building manager, and the defendants, Felix Broge and Antonio Gainza, who were in the apartment. The prosecuting attorney did not call either Officer Kolgani or Officer Townsend as a witness in an attempt to resolve this conflict or to corroborate Officer Joyce's testimony. Nor did the prosecuting attorney offer any explanation for not calling them as witnesses.

Officer Joyce testified that when they arrived at the apartment with the closed, locked, metal burglar gate across the wooden entrance door, he directed Hidalgo to unlock the lock on the metal gate and that Hidalgo did so. Hidalgo denied, however, that he unlocked the iron burglar gate to the apartment entrance. Hidalgo testified further that Officer Joyce and the other officers first came to his apartment on the third floor and after searching his apartment and finding nothing, the officers then proceeded to Gainza's apartment, where the iron burglar gate was open. Hidalgo testified that the officers kicked and broke in the wooden door to Gainza's apartment.

Defendant Gainza testified that before he went to sleep on the couch in the apartment, the burglar gate outside his apartment entrance door was locked, that he went to sleep and that when he first noticed the officers they were inside his apartment; that the officers awakened him when they pulled a blanket off him; that he saw that

the wooden apartment entrance door had been broken into but he did not hear the officers breaking through the door into his apartment.

Defendant Felix Broge testified that he was asleep in the bed near the apartment entrance door. There was a heavy chain on the wooden entrance door and he sensed and heard the police when they pushed in and tore down the wooden entrance door. Broge testified further that there were metal burglar bars outside the wooden door and that the officer got through the burglar bars with the manager's key. Both Gainza and Broge testified that the officers did not have a warrant and as Hidalgo, the building manager, testified, Gainza and Broge also testified that they did not unlock any locks to allow the officers to enter the apartment and that the officers did not ask their permission to enter the apartment.

Officer Joyce testified, however, that after Hidalgo unlocked the burglar bar gates at the apartment entrance door, Joyce knocked on the door and the defendant Broge came to the door, opened it and admitted Joyce and his partner into the apartment. Joyce denied that the officers broke through the wooden door to enter the apartment. He was not substantiated or corroborated, however, in this denial by either Officer Kolgani or Townsend.

If Hidalgo unlocked and opened the burglar gates pursuant to Joyce's direction, as Joyce testified he did but which Hidalgo denied, there was no evidence that Hidalgo did so freely and voluntarily or that he had authority to do so. It can be said of Joyce's testimony in this regard that Hidalgo yielded to Joyce's police authority and complied with Joyce's direction. Moreover, it would appear to be somewhat unusual for the officers to persuade Hidalgo to surreptitiously open the locked burglar gates and thereafter seek admission into the apartment by a simple knock at the wooden door. If the officers anticipated their voluntary admission into the apartment by a knock at the door, it would seem that they would have likewise anticipated such a voluntary admission from a knock by them from outside the burglar gate.

Although Joyce and his partners ostensibly entered the building and Gainza's apartment because they had been told by the two prostitutes that they had purchased narcotics, nevertheless, after having the burglar gate to the apartment entrance unlocked by the building manager and after entering the apartment, the question that Joyce asked Felix Broge was nothing about narcotics, but rather, "[w]hat was he doing in a building that was abandoned?"

Joyce testified that he observed defendant Gainza lying on the couch and that as he talked to defendant Broge, he observed several

plastic packets and next to them a plastic bag containing a white powder substance on the kitchen table next to a large hurricane lamp. Broge and Gainza were convicted of the unlawful possession of the white powder substance, a controlled substance.

The State does not contend before this court that after having directed Hidalgo to unlock the burglar gates, the officers were authorized to forcibly break down the door to the apartment and enter the apartment and arrest the occupants, as the defendants and Hidalgo testified the officers did. Such a contention would be untenable under *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371. Nor does the State contend before this court that Hidalgo, the building manager, possessed authority to unlock and open the burglar gates to the apartment entrance door. This contention would be untenable under *Chapman v. United States* (1961), 365 U.S. 610, 5 L. Ed. 2d 828, 81 S. Ct. 776.

█ In spite of the testimony of the building manager, Hidalgo, and the defendants that the officers forcibly broke open the door and entered the apartment after first unlocking the burglar gates, and even though Joyce's contrary testimony was not corroborated by the testimony of his partners, Kolgani and Townsend, and even though no explanation was offered for the State's failure to have called them as witnesses, the State contends before this court that the officers' entry into the apartment was consensual, because, according to Joyce's testimony, defendant Broge opened the apartment door pursuant to the officer's knock and admitted them into the apartment. This contention is also untenable.

The unlawful invasion of the defendants' premises commenced with the unlocking and opening of the iron burglar gate to the entrance door of the defendants' apartment, even if the gate was unlocked and opened by Hidalgo as Officer Joyce testified. There was no evidence that Hidalgo was authorized by either defendant or that either defendant consented to Hidalgo's unlocking and opening the burglar gate. Broge testified that when he retired for the evening the burglar gate was locked. After being awakened, if he opened the apartment door pursuant to the officer's knock, as Joyce testified he did, he would have presumably done so under the impression that the burglar gate was still locked, which would have prevented the officers' entry into the apartment. If Joyce entered the apartment after Broge opened the apartment door, contrary to the testimony of Broge, Gainza and Hidalgo that the officers broke open the door and entered, Broge's opening of the apartment door did not relate back and validate the officers' preceding unlawful unlocking and opening of

the burglar gate at the door.

■■ Moreover, the State's contention that the officers' entry into the apartment was consensual is contrary to *Johnson v. United States* (1948), 333 U.S. 10, 92 L. Ed. 436, 68 S. Ct. 367. In *Johnson*, the officers smelled the unmistakable odor of burning opium emanating through the defendant's apartment door. The officers knocked on the defendant's apartment door and testified that they were "admitted" by the defendant. In rejecting that the entry was consensual, the Supreme Court held in *Johnson*:

> "Entry to defendant's living quarters, which was the beginning of the search, was demanded under color of office. It was granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right." 333 U.S. 10, 13, 92 L. Ed. 436, 440, 68 S. Ct. 367, 368.

Regarding the alleged consensual search of an automobile in *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 248, 36 L. Ed. 2d 854, 875, 93 S. Ct. 2041, 2059, the Supreme Court held:

> "[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied."

In the case at bar there is not one iota of evidence that Broge or Gainza voluntarily consented to the officers' entry or that the defendants invited them into the apartment. If the defendants' version of the officers' forcible entry is rejected and Joyce's contradicted and uncorroborated version of the officers' entry is accepted, Joyce's version not only failed to establish a consensual entry, but conversely, his version established a nonconsensual unlocking and opening of the burglar gates and the officers' nonconsensual entry into the apartment.

The trial judge utilized an improper criterion in resolving these converse issues and in denying the motion to suppress. The trial court incorrectly allocated the burden of proof. The trial court held:

> "*What we have here is at least three versions, four versions of what transpired that night. The burden of proof is on the mover.* The defendants' theory of the case through Mr. Hidalgo's testimony and Mr. Broge's testimony is that the door according to Mr. Gainza was locked, that is the steel gate. Mr. Broge heard someone at the door and then the police were in there and the lock had been somehow kicked out and the door [fell]. Mr. Hidalgo supplements that by saying he arrived at the gate and the police officers kick[ed] [*sic*] open the wooden door.

The police officer who testified denies that the door was kicked out but has testified he knocked on the door. The door was opened by Mr. Broge. Mr. Gainza says he was sleeping in a room, the same room that the door opened into. When he was awoke, he was awakened by policemen pulling a blanket off him. He said he heard no crashing or smashing.

Based on the record, *I don't think that the testimony [of Officer Joyce] has been sufficiently rebutted.* I'm going to deny the motion." (Emphasis added.)

In holding that the trial court erred in not granting the defendant's motion to suppress and in reversing the judgment of conviction in *People v. Talley* (1975), 34 Ill. App. 3d 506, 508, 340 N.E.2d 167, the court held:

"While the burden of proof that a search is unlawful rests with a defendant moving to suppress the evidence, a defendant may meet that burden by establishing a *prima facie* case in showing that the officer conducting the search did not have an arrest or search warrant and that the officer did not observe the defendant doing anything unusual. Once the defendant has established such a *prima facie* case showing an unlawful search, the burden of going forward with the evidence is shifted to the prosecution to show that the officer had reasonable grounds for the search. (*People v. King*, 12 Ill. App. 3d 355, 298 N.E.2d 715; *People v. Moncrief*, 131 Ill. App. 2d 770, 268 N.E.2d 717; *People v. Cassell*, 101 Ill. App. 2d 279, 243 N.E.2d 363.)"

In *People v. Clark* (1977), 55 Ill. App. 3d 379, 385, 370 N.E.2d 1111, this court held that "the courts in Illinois have consistently held that once the defendant has made a *prima facie* case that the police lacked probable cause (*i.e.*, by evidence that the police had no warrant, and that defendant was doing nothing unusual at the time of his arrest), the burden of going forward with evidence to demonstrate the legal justification for the search shifts to the State." The court similarly stated in *People v. Moncrief* (1971), 131 Ill. App. 2d 770, 773, 268 N.E.2d 717, "At the hearing on the motion to suppress, the burden of proving that the search and seizure was unlawful was on the defendant. (1969 Illinois Revised Statutes, ch. 38, par. 114—12(b)). At the hearing on the motion to suppress the evidence, however, a defendant may shift the burden of proving the validity of the arrest to the State when the defendant shows he was doing nothing unusual when he was arrested and makes a *prima facie* case that the police lacked probable cause. In such event, the burden of going forward with the evidence to negate it shifts to the State."

■ In the case at bar the defendants testified that they were arrested without an arrest or search warrant. They testified further that the officers forcibly broke open the apartment door after the iron burglar gate to the apartment entrance had been unlawfully unlocked and opened. They were corroborated by Hidalgo, whom the defendants called as a defense witness. Thus, they went beyond the *prima facie* case that the officers lacked a warrant. They went further and established by the testimony of all the witnesses available to them that the officers' entry into the apartment was unlawful and with force. When the trial court stated that there were "four versions of what transpired that night, the burden of proof is on the mover. *** Based on the record, I don't think that the testimony [of officer Joyce] has been sufficiently rebutted," the trial court improperly placed the burden on the defendants to further rebut Officer Joyce's contrary testimony. The defendants had already done so. Why the trial court imposed on the defendants this additional burden is unclear. It is clear however that the burden was then on the State to call Officer Joyce's partners, Kolgani and Townsend, to corroborate Joyce's testimony, if they could, of the unlocking and opening of the closed and locked burglar gates and Joyce's claimed nonforceful and peaceful admission into the apartment. Clearly the additional burden was not on the defendants to call Officers Kolgani and Townsend as defense witnesses to contradict the testimony of their partner, Officer Joyce.

Regarding the burden of proof where consent is relied on by the State for validating a warrantless search, the Supreme Court stated in *Bumper v. North Carolina* (1968), 391 U.S. 543, 548, 20 L. Ed. 2d 797, 802, 88 S. Ct. 1788, 1792, that "[w]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given."

The trial court erred in overruling the defendants' motion to suppress. Because we reverse on this ground, we decline to pass on the other contentions raised by the defendants for reversal.

Judgment reversed.

WHITE and MANNING, JJ., concur.