THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PETER ASSENATO, Defendant-Appellant.

Second District No. 2—88—0557

Opinion filed July 26, 1989.

Terence Gillespie, of Genson, Steinback & Gillespie, of Chicago (Marc W. Martin, of counsel), for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and

Colleen M. Griffin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

After trial by jury defendant, Peter Assenato, was found guilty of unlawful possession of a controlled substance, armed violence and unlawful use of weapons by a felon, and was sentenced to 10 years' imprisonment. He appeals, contending that (1) there was no probable cause to effectuate the traffic stop of his vehicle; (2) the stop for a traffic violation was merely a pretext to search for evidence; (3) the seizure and search of defendant after the stop was unconstitutional; (4) improper and prejudicial implications that defendant had committed other crimes were made in trial; and (5) the State's closing argument was prejudicial.

On December 17, 1986, at approximately 8:15 p.m., Detective Nurczyk of the Lombard police department arrived at defendant's suspected residence in Winfield, Illinois, to conduct a surveillance of the home. Although Winfield is outside of the boundaries of Nurczyk's police officer jurisdiction, defendant was a suspect in a homicide which had occurred in Lombard six weeks earlier, and the Lombard police were seeking to locate and question him. Lombard police officers, at the direction of Detective Cuny, had conducted surveillance of defendant's home during the six-week period.

Shortly after Nurczyk began the surveillance, two persons left the home and drove away in a small Pontiac. Nurczyk followed in an unmarked car and determined that the vehicle did not have a rear license plate. It was subsequently established that the vehicle had a four- by five-inch-license-applied-for form displayed on the back window, but Nurczyk stated he did not notice it at that time. Nurczyk continued to follow the vehicle and, by police radio, notified Cuny of the absence of a rear license plate. The decision was made to stop the vehicle and speak with the occupants. As defendant's car was outside of the Lombard village limits, it was necessary for Nurczyk to seek the assistance of police officers who had jurisdiction in the area. Du Page County Sheriff's Deputy Kundrot overheard this conversation while monitoring radio transmissions and met Cuny. Cuny told Kundrot that the car Nurczyk was following did not have registration plates and that the situation involved a murder investigation.

Officer Kundrot stopped the vehicle defendant was driving, Cuny pulled up behind Kundrot's marked squad car, and Nurczyk also stopped. Both Officer Kundrot and Cuny observed that the vehicle had no rear license plate, and both testified that the driver appeared

to be handing something to the passenger. Defendant exited the driver's door of the vehicle and walked to the rear, where he was met by Kundrot and Cuny. Cuny recognized defendant from a booking photo and patted down the outside of defendant's coat. Officer Kundrot asked defendant for his driver's license, which he was unable to produce. Kundrot walked to the front of the vehicle to check the VIN number and noticed that defendant's passenger, Angela Cassaccio, was still in the passenger seat of the car and was manipulating an object in her waistband. Kundrot informed Cuny, and they went to the front of the car, leaving defendant with Nurczyk. Kundrot ordered Cassaccio to get out of the car, but she refused to open the coat she was holding shut with her hands in her pockets. When Cassaccio turned her back on Cuny and reached toward her waistband with one hand, Cuny turned her around and saw she was holding a revolver. She was handcuffed and taken into custody.

Defendant was then arrested and searched, and Cuny recovered $1,545.00, a clam-shaped container, a vial, and a spoon from defendant's person. It was later determined that the vial contained .016 grams of a substance containing cocaine and the clam-shaped container had in it .07 grams of a substance containing cocaine.

Defendant was initially charged with possession of a controlled substance with intent to deliver and armed violence. He was subsequently indicted for those offenses and for possession of a controlled substance, unlawful use of weapons by a felon, and armed violence based on possession of a controlled substance.

Prior to trial, defendant filed a motion to quash arrest and suppress evidence which was denied. The fact that defendant was a suspect in a homicide was not introduced at trial, although the State did adduce the fact that officers wanted to question him on an unrelated matter and had been following him prior to the traffic stop. The jury returned verdicts of not guilty on the charges of possession of a controlled substance with intent to deliver and armed violence based on possession of a controlled substance with the intent to deliver, and found defendant guilty of possession of a controlled substance, armed violence based on possession of a controlled substance and unlawful use of weapons by a felon, for which concurrent sentences of imprisonment were imposed.

■ Defendant contends first that there was no probable cause to justify the initial stop of his vehicle. There are no conclusive rules for determining whether an investigatory stop is justified and each case must be adjudicated on its own facts. (*People v. Moffitt* (1985), 138 Ill. App. 3d 106, 112, 485 N.E.2d 513.) The investigating officers testified

that they stopped the car driven by defendant because it did not have a rear license plate and was thus in violation of the Illinois Vehicle Code. (See Ill. Rev. Stat. 1987, ch. 95½, par. 3—701.) This fact provided the officers with justification for stopping defendant. (See *People v. Tylkowski* (1988), 171 Ill. App. 3d 93, 98, 524 N.E.2d 1112.) Although a license-applied-for sticker would be sufficient to operate the vehicle, the stop was at night and both Nurczyk and Officer Kundrot testified that they did not see the license-applied-for sticker until defendant's vehicle had been stopped and defendant was outside the vehicle.

■ ■ Defendant argues that the officers' claim that they did not see defendant's license-applied-for sticker is irrelevant to an objective inquiry into this matter. However, the test is not what the officers objectively should have seen; the test is whether, viewed objectively, the totality of the facts and circumstances known to the officer at the time of the stop would warrant a reasonable and prudent person to believe a crime had been committed. (*People v. Montgomery* (1986), 112 Ill. 2d 517, 525, 494 N.E.2d 475.) In this case, the officers had evidence that defendant's vehicle did not possess a rear license plate which, viewed objectively, would lead a reasonable and prudent person to believe a crime had been committed.

■ Defendant also makes reference to the fact that he was not charged with a traffic offense. While an *ad hoc* discovery that a person committed an offense does not justify a seizure that was not supported by probable cause at the time it was made, probable cause to arrest will not be invalidated by a later determination not to charge a person for the offense for which he was originally stopped. An officer may always warn of a traffic violation or reprimand the driver without citing him, and the officer need not charge a minor violation when, after a stop, a more serious violation is discovered. See *People v. Flowers* (1982), 111 Ill. App. 3d 348, 352, 444 N.E.2d 242.

■ ■ Defendant states that probable cause to justify the initial seizure of defendant was lacking because the officers would have had to notice that defendant had a license-applied-for sticker on the back window of his vehicle. However, the officers testified that they did not see the application, and that testimony was believed by the trier of fact. The credibility of witnesses is a matter for the trier of fact and will not be disturbed on appeal unless the evidence upon which the verdict is based is so unsatisfactory as to raise a reasonable doubt of the defendant's guilt. (*People v. Ziehm* (1983), 120 Ill. App. 3d 777, 783, 458 N.E.2d 588.) This court cannot conclude that there is a reasonable doubt that officers following a vehicle on a highway at night

must have spotted and read a license application on the back window of defendant's vehicle. We find that the visual observation of a missing rear license plate constituted reasonable grounds to stop a vehicle, and defendant does not dispute the fact that his vehicle did not have the license plate.

■ Next, defendant argues that stopping him for an alleged traffic violation was merely a pretext to search for evidence. Reviewing courts have been concerned with the problem of random stops of vehicles as a pretext or subterfuge for a search or for harassment (*People v. Patterson* (1980), 88 Ill. App. 3d 144, 146, 410 N.E.2d 223); however, the facts in this case do not raise this concern. Here, the police stopped defendant's vehicle for having no rear license plate. While conceding that they wanted to talk to defendant concerning his possible involvement in a murder, the officers were not seeking to arrest defendant at that time or to obtain evidence from the occupants of the car. In fact, the officers did not even know who was in the car as it had been too dark for Nurczyk to see who entered the car at defendant's residence. That defendant was committing a violation of the Illinois Vehicle Code was a reasonable inference drawn from the observations of the officers and not a pretext.

Next, defendant contends that the search and seizure conducted after the initial stop was unconstitutional, requiring suppression.

■ At the hearing on defendant's motion to suppress, Cuny testified that after defendant's car was stopped, he observed an object being passed from the driver to the passenger. The driver of the vehicle got out and walked to meet Cuny and Kundrot and, at that point, Cuny recognized him as defendant. Prior to this encounter, Cuny was aware that defendant's vehicle had been observed at the scene of a murder, defendant had told a third party that he was going to inflict injury on the murder victim, he had threatened the murder victim with a gun, and he had struck the decedent in the head with a gun several weeks before the murder. Cuny also had information that defendant was tied to organized crime, he was a narcotics dealer, and had bragged that he was responsible for several deaths. Although it subsequently was determined that a valid license-applied-for sticker was on the window of the car, the pat-down search was justified since, at the time the search was made, Cuny had specific, articulable facts which, when taken together with natural inferences, made the search reasonable. (*People v. Smithers* (1980), 83 Ill. 2d 430, 436, 415 N.E.2d 327.) Knowledge concerning a particular defendant may be considered as facts supporting a *Terry* stop and frisk. (See *People v. Solis* (1985), 135 Ill. App. 3d 991, 994-95, 482 N.E.2d 207.) We find

that the frisk was proper, given the facts known, and sufficiently limited in scope as Cuny testified that the initial search consisted only of his patting down the outside of defendant's fur coat.

After Cuny conducted the pat-down search of defendant, defendant informed the officers that he did not have a driver's license. (See Ill. Rev. Stat. 1987, ch. 95½, par. 6—112.) In checking for the VIN number, Officer Kundrot observed the passenger reaching into her waistband as if she were manipulating an object. Despite Kundrot's instruction to place both hands on the dashboard, the passenger kept reaching for the front of her waistband and moving the object. When the passenger was searched, a gun was retrieved. The recovery of the gun, together with Cuny's and Kundrot's observations of an object being passed from defendant to passenger, established probable cause to arrest defendant for unlawful use of a weapon.

Defendant argues that probable cause to arrest a person cannot arise merely from being in the company of another person who has been arrested. However, two of the three arresting officers saw defendant pass an object to the passenger, who was found to be carrying a gun, and Cuny knew that defendant had been known to carry a gun. Furthermore, given the fact that an unlawful-use-of-weapons charge may be based upon a theory of constructive possession (*People v. Williams* (1981), 98 Ill. App. 3d 844, 847, 424 N.E.2d 1234), the officers in this case were not required to actually find the gun on defendant's person in order to believe that probable cause existed to arrest him for that offense. While more evidence may be needed to convict, convictions have been upheld even where a weapon was not found on the defendant and where others had access to it. (*Williams*, 98 Ill. App. 3d at 848.) The independent and reasonable search of the defendant's passenger which produced a gun, coupled with the observations of defendant at the time his vehicle was stopped, provided probable cause to arrest defendant for unlawful use of a weapon.

■■ ■ It was incident to this lawful arrest that Cuny searched defendant. We note that, although neither side discusses the arrest of defendant by peace officers who were outside of their jurisdiction where the arrest occurred, the officers acted within the parameters of the law. (See *People v. Rowe* (1984), 128 Ill. App. 3d 721, 724, 471 N.E.2d 578.) The scope of a search incident to a lawful arrest extends to a search of the person and to the area within his immediate control. (*Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034.) The scope of the search in this case was proper, and defendant's motion to suppress was properly denied. The evidence obtained pursuant to the search of the passenger provided probable

cause to arrest defendant and the evidence obtained as a result of the arrest and search incident to arrest of defendant was admissible. A trial court's decision on a motion to suppress should not be reversed unless manifestly erroneous (*People v. Bajt* (1983), 113 Ill. App. 3d 459, 464, 447 N.E.2d 432), and reversal is not warranted in this case.

Finally, defendant argues that his trial was replete with improper, irrelevant, and highly prejudicial references and implications that defendant had committed other crimes.

■■■ Initially, defendant contends that in its opening statement the State stressed that the police had defendant under surveillance prior to the traffic stop and that this argument permitted the jury to infer prior criminality. Counsel for the State stated, "It was about 8:15 p.m. when Detective Al Nurczyk of the Lombard Police Department pulled into a driveway. He was conducting surveillance that night. He was conducting surveillance of a house next door to Peter Assenato's. He was sitting in the driveway of the house next door to Peter Assenato's." After defendant's objection to the above statement, the State was instructed not to use the word "surveillance" and was permitted to continue its opening argument. The State then began, "[A]pproximately 8:15 p.m., Detective Nurczyk of the Lombard Police Department followed a vehicle as it left a location in Winfield, Illinois. He followed that vehicle east on Roosevelt Road." The State did not disclose during its opening argument that the police had defendant under surveillance, and we do not find any merit to defendant's first argument.

■■■ Defendant's second supposed example of other crimes evidence is that the jury was permitted to infer defendant had criminal propensities by virtue of the State adducing that other things were discussed when Detectives Cuny and Glennon questioned defendant during a 45-minute to one-hour interrogation session following defendant's arrest. It is speculative to conclude that a jury will automatically associate other things being discussed with criminal propensities on the part of the defendant. See *People v. Berlin* (1979), 75 Ill. 2d 266, 269, 388 N.E.2d 412.

■■■ Defendant's third example of other crimes evidence is that the State made reference to defendant's statement following his arrest in which he boasted that he lived in an expensive hotel, owned a BMW, a Porsche, a $1,000 fur coat, and a $2,000 wrist watch. The State was precluded by the trial court from referring to these statements during the trial. Following counsel's statement that defendant lived in a hotel, and prior to defendant's objections to the State's opening argument regarding defendant's possessions, the trial court

cautioned the jury that opening statements were not evidence. At the end of the trial, the jury was again instructed that statements made during opening and closing arguments were not evidence, and any statement that was not based on evidence was to be disregarded. Defendant contends that this statement, taken together with the State's evidence that defendant supported himself through cocaine and was unemployed for several months, leads to the inference that defendant obtained the items through criminal ventures. That defendant was unemployed for several months was noted by the State in closing argument, which statement was objected to and sustained, and the jury was admonished that this was not evidence. Again, even if the jury did not disregard this statement, as admonished, it is mere speculation to conclude that the jury inferred that the items were obtained through illegal ventures.

 Defendant's fourth example of error relates to the seizure of $1,545 from his person at the time of his arrest which was found wrapped around a container of cocaine. Defendant told Cuny that the money was from the sale of cocaine and he was charged with unlawful possession of narcotics with intent to deliver. It was proper for the State to introduce this evidence as it was admitted to prove an element of the crime charged, not to establish defendant's propensity to commit crime. See *People v. Bartall* (1983), 98 Ill. 2d 294, 309-10, 456 N.E.2d 59.

 Defendant also argues that the manner by which the State proved the charge of unlawful use of weapons gave the jury the opportunity to surmise and guess as to defendant's involvement in other criminal activities. In putting in the evidence of defendant's prior conviction, the State called the officer who arrested defendant for the prior felony. The witness did not go into any details of the prior felony, but he testified that he had observed defendant commit a felony offense. Such information was necessary to establish an element of the unlawful-use-of-weapons charge. See *People v. Bartall*, 98 Ill. 2d at 309-10.

 Defendant also argues that the State introduced evidence that he had committed numerous other violations of the law. However, these other crimes, namely, that defendant had no rear license plate, and no driver's license, were admitted to show why defendant was stopped in the first instance. (See *People v. Johnson* (1982), 104 Ill. App. 3d 572, 578, 432 N.E.2d 1232.) As defendant challenged his initial stop, this evidence was relevant and properly introduced. Evidence that defendant did not possess a gun registration card was not prejudicial and was, at most, harmless error.

■■ Finally, defendant contends that the State's closing arguments were improper. He states that the State repeatedly misstated the law as to armed violence by wrongfully suggesting that one commits armed violence by merely possessing a weapon during commission of a felony rather than being armed with a weapon. However, the State stated only that possession was sufficient to find defendant guilty of unlawful use of a weapon by a convicted felon, and the jury was properly instructed as to the law. Defendant's claim that the State improperly attacked the integrity of defense counsel lacks merit as, in context, the prosecutor's statement that the defense misled the jury was not tantamount to an accusation that the latter lied. See *People v. Hudson* (1981), 102 Ill. App. 3d 346, 352, 430 N.E.2d 51.

■■ ■ Defendant also contends that by stating that defendant, as a cocaine dealer, disregarded "everybody else's misery [and] *** the crimes that people commit to get cocaine," the State improperly appealed to the community's general abhorrence of cocaine. The State may comment unfavorably on the evil effects of crime. (*People v. Hope* (1986), 116 Ill. 2d 265, 277-78, 508 N.E.2d 202.) Argument suggesting that, had Angie Cassaccio not been uncomfortable with the gun, defendant would have escaped, we find was a reasonable inference from the evidence. (See *People v. Hicks* (1981), 101 Ill. App. 3d 238, 243, 427 N.E.2d 1328.) Finally, the argument that this case was important to the State, that the jury should send a message, and that the citizens of Du Page County depend on the legal system were isolated comments which in no way contributed to the jury verdict. We do not find any of these comments to be error in this case.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

DUNN and INGLIS, JJ., concur.