THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANGELO ANTHONY GUERRIERI, Defendant-Appellant.

Fifth District   No. 5—88—0356

Opinion filed February 26, 1990.

498

George F. Taseff, of Jennings, Novick, Eggan & Ostling, of Blooming-ton, and Bruce Alter, of Miami, Florida, for appellant.

Mark C. Hunter, State's Attorney, of Metropolis (Kenneth R. Boyle, Stephen E. Norris, and Matthew E. Franklin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Following a stipulated bench trial in Massac County, the defendant, Angelo Anthony Guerrieri, was found guilty of unlawful possession with intent to deliver a controlled substance and unlawful possession of a controlled substance. He appeals, contending that (1) the stop for a traffic violation was unreasonable and merely a pretext to search for evidence; and (2) the State failed to prove that the defendant voluntarily consented to the warrantless search of his luggage and other closed containers located in his vehicle.

At approximately 8 a.m. on October 23, 1987, Trooper Greg Geittman of the Illinois State Police and his immediate supervisor, Sergeant Dwain Goss, met at a rest area located at the junction of Interstate 24 and U.S. Route 45 (Route 45) outside Metropolis, Illinois, to discuss the day's patrol assignments. As each officer arrived, he noticed a BMW automobile parked in the rest area with Florida license plates and what appeared to be a "shattered and obscured" rear window. A white male, later identified as defendant, was asleep in the vehicle, alone. A short time later, as both officers were seated in Goss' squad car talking, they observed the BMW drive up the access road from the rest area and past them. The vehicle veered to the right of a safety island, arriving at the stop sign at the intersection of the access road and Route 45, and completed the right turn. At no time did defendant signal a right turn before proceeding east on Route 45.

Trooper Geittman decided to effect a traffic stop of the vehicle for failing to signal and for having an obscured rear window. Sergeant Goss admitted, however, that even absent the signal violation, it was "more than likely" the officers would have stopped the vehicle due to the condition of the rear window. After stopping the BMW, Trooper Geittman approached the defendant, who had exited the vehicle, advised him of the traffic violations and requested his driver's license and vehicle registration. Observing a sheathed hunting knife lying between the driver's seat and the open driver's door, Trooper Geittman, for his personal safety, retrieved the knife and placed it on top of the car. Geittman then asked defendant to join him and Sergeant Goss, who had arrived at the scene, in Geittman's squad car, where he issued defendant written warnings for failure to signal when required and for driving with an obstructed rear window. (See Ill. Rev. Stat. 1987, ch. 95½, pars. 11–804, 12–503(e).) Having learned through the computer that defendant was not the registered owner of the BMW, Geittman ran a criminal history check, which revealed that defendant had been previously charged with a weapons violation and a narcotics violation. Based on this information, Geittman and Goss decided to

ask defendant if he would consent to a search of the vehicle he was driving. Receiving defendant's oral consent, Sergeant Goss prepared a standard departmental consent to search form that defendant read and signed.

Preparatory to the search, Geittman asked defendant if he had any drugs or firearms in the vehicle, and defendant admitted having a gun in the trunk. At the officers' direction, defendant opened the trunk and pointed to a piece of luggage from which Sergeant Goss retrieved a semi-automatic pistol and ammunition. Further search revealed a man's purse located on the rear seat of the BMW, within which was found a small Tupperware bowl. In that bowl, a substance containing cocaine was found. Geittman then took defendant into custody and transported him to the Massac County sheriff's department.

At some point during the search, Sergeant Goss radioed the "K-9 Unit" to come to the scene. Officers Dan Stitt and J.D. Haverkamp of the Massac County sheriff's department responded and, using a narcotics detection dog, conducted a search of the vehicle which yielded a package containing a substance containing cocaine. A custodial search of defendant's person uncovered a small wooden vial which field-tested positive for the presence of cocaine.

The defendant was initially charged with unlawful possession with intent to deliver a controlled substance, armed violence, and unlawful possession of a controlled substance. The armed violence charge was dismissed prior to trial. Defendant's motion to suppress evidence was denied following a hearing. Defendant waived his right to a jury trial and proceeded to a bench trial, the parties stipulating to the facts as presented at the motion to suppress hearing. Upon the court's finding of guilt, defendant received an agreed disposition, the terms of which included eight years' imprisonment, a fine of $1,000, a "street value" fine of $22,697, and costs.

■ Defendant first contends that the trial court erred in denying his motion to suppress evidence where there was no objectively reasonable basis for the initial stop of his vehicle. Both Trooper Geittman and Sergeant Goss testified that the defendant was stopped because his vehicle had an obscured rear window and because he failed to signal before turning onto Route 45. In its order denying the defendant's motion to suppress evidence, the trial court found that "the Illinois State Police validly stopped the defendant and his vehicle for failure to signal pursuant to the Illinois Vehicle Code." (See Ill. Rev. Stat. 1987, ch. 95½, par. 11—804.) Findings of fact by the trial court are not to be disturbed unless against the manifest weight of the evidence. (*People v. Medina* (1978), 71 Ill. 2d· 254, 258, 375 N.E.2d 78,

79; *People v. Thomas* (1979), 75 Ill. App. 3d 491, 493, 394 N.E.2d 624, 627.) Since a traffic violation provides more than a reasonable basis for stopping a vehicle (*People v. Manikowski* (1989), 186 Ill. App. 3d 1007, 1010-11, 542 N.E.2d 1148, 1151), a legitimate signal violation would provide Trooper Geittman with justification for stopping defendant. See *People v. Tylkowski* (1988), 171 Ill. App. 3d 93, 98, 524 N.E.2d 1112, 1116; *People v. Assenato* (1989), 186 Ill. App. 3d 331, 337, 542 N.E.2d 457, 460.

■ Defendant argues that his failure to signal when exiting the rest area was not a traffic violation under the applicable code provision. Section 11—804 of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—804) states in pertinent part:

"§11—804. When signal required. (a) No person may turn a vehicle at an intersection *** or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person may so turn any vehicle without giving an appropriate signal in the manner hereinafter provided.

(b) A signal of intention to turn right or left when required must be given continuously during not less than the last *** 200 feet traveled by the vehicle before turning outside a business or residence district."

■ The record reveals that the rest area access road makes a T-intersection with U.S. Route 45. At the end of the access road is a small safety island which separates vehicles wishing to turn left and proceed west on Route 45 from those wishing to turn right and proceed east. Defendant asserts that he was not obligated to signal under section 11—804 (Ill. Rev. Stat. 1987, ch. 95½, par. 11—804), because he did not have to turn his vehicle "from a direct course or move right or left upon a roadway" in order to proceed east on Route 45 from the access road. However, defendant's exhibit 1, a photo of the Route 45 access road intersection, reveals that an eastbound traveler would be required first to veer to the right of the safety island and then, after a stop at the stop sign, to complete the right turn onto Route 45. Therefore, under section 11—804, the defendant was obligated to signal his intention to turn right prior to reaching the safety island, and to continue his signal until his turn onto Route 45 was completed. As defendant does not dispute the fact that he failed to signal, we find that Trooper Geittman's stop of defendant was reasonably based on a legitimate violation of the statute.

■ Defendant further contends that stopping him for an alleged traffic violation was merely a pretext to search his vehicle. In deter-

mining whether an investigative stop is invalid as pretextual, the proper inquiry is whether a reasonable officer would have made the seizure in the absence of an illegitimate motive. (*United States v. Smith* (11th Cir. 1986), 799 F.2d 704,708.) However, an objectively reasonable stop or other seizure is not invalid solely because the officer acted out of an improper or dual motivation. (*Smith*, 799 F.2d at 708-09; see also *Assenato*, 186 Ill. App. 3d at 338, 542 N.E.2d at 461.) "Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' [citation] and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon* (1985), 472 U.S. 463, 470-71, 86 L. Ed. 2d 370, 378, 105 S. Ct. 2778, 2783, quoting *Scott v. United States* (1978), 436 U.S. 128, 136, 56 L. Ed. 2d 168, 177, 98 S. Ct. 1717, 1722.

■■ In this case, Trooper Geittman acted reasonably in stopping defendant for failure to signal when required, since it is the primary statutory duty of Illinois State Police troopers to enforce the Illinois Vehicle Code. (Ill. Rev. Stat. 1987, ch. 121, par. 307.16.) Because we find the stop to be reasonable based on the signal violation, we need not consider whether the condition of the rear window alone would have furnished justification for a stop of defendant. In any event, while Sergeant Goss conceded that defendant "more than likely" would have been stopped even if he had signaled when exiting the rest area, the alternate reason given for the stop was a presumably proper one—defendant's operation of a vehicle with an obscured and possibly unsafe windshield—rather than an improper one—defendant's similarity to the "drug courier profile." (See *Reid v. Georgia* (1980), 448 U.S. 438, 65 L. Ed. 2d 890, 100 S. Ct. 2752.) Therefore, at the time of the stop, the officers were acting on the reasonable inference that defendant had violated the Illinois Vehicle Code and not on pretext. See *Assenato*, 186 Ill. App. 3d at 338, 542 N.E.2d at 461.

Defendant's final contention is that the trial court erred in finding that he voluntarily consented to a warrantless search of his luggage and other closed containers found in his vehicle. More specifically, defendant argues that the State failed to sustain its burden of proving consent, in the face of defendant's testimony that he withdrew any permission he may previously have given to search his vehicle.

■■ It is well established that consent to search waives the warrant requirement of the fourth amendment only to the extent granted by defendant in his consent. (*People v. Porter* (1986), 141 Ill. App. 3d 71, 73, 489 N.E.2d 1154, 1156, *cert. denied* (1986), 479 U.S. 951, 93

L. Ed. 2d 387, 107 S. Ct. 439; *People v. Sanders* (1976), 44 Ill. App. 3d 510, 515, 358 N.E.2d 375, 378-79.) Officers Goss and Geittman testified that prior to any search of the vehicle, defendant signed a written consent which defined the permissible scope of the search as "vehicle *** including luggage and contents thereof." Defendant testified, however, that he initially gave only a limited oral consent to "look" into the interior of the car, that he twice attempted to withdraw this consent when he. observed Sergeant Goss open and search his luggage, and that he signed the written consent form only after the search was completed.

Defendant argues that his version of the events is partially corroborated by the testimony of Officer Stitt. While some discrepancy exists between the testimony of Stitt and the troopers as to who participated in the initial search and at what point defendant was taken from the scene, the three officers are consistent in their denial of any revocation or limitation of defendant's consent. Indeed, Stitt testified that as he stood with defendant while his car was searched, the two "had a conversation about the weather and just how things were going."

Based on the evidence presented at the motion to suppress hearing, the trial court specifically found that:

"2. *** defendant voluntarily gave consent, in writing, to the Illinois State Police to allow the vehicle he was driving and the contents and luggage therein to be searched;

3. That said Consent was given prior to any search of his vehicle as testified by Illinois State Police Officers Dwain Goss and Greg Geittman and not after said search as testified by the Defendant;

4. That Defendant did not revoke or limit his Consent in any manner ***."

■ It is not for the reviewing court to determine the weight and credibility of evidence. It is the province of the court hearing the motion to suppress to determine the witnesses' credibility and the weight to be given their testimony, since it had the advantage of observing their demeanor while testifying. (*People v. Johnson* (1984), 123 Ill. App. 3d 1008, 1012, 463 N.E.2d 877, 880.) A trial court's ruling on a motion to suppress will not be overturned unless it is clearly erroneous. (*People v. Clark* (1982), 92 Ill. 2d 96, 99, 440 N.E.2d 869, 871.) Applying these standards to the case at bar, we cannot say that the trial court's conclusion is clearly erroneous.

■ Defendant cites *People v. Broge* (1987), 159 Ill. App. 3d 127, 511 N.E.2d 1321, for the proposition that the State had the burden of

rebutting defendant's assertion that he revoked his consent. Defendant's reliance on *Broge* is misplaced. In *Broge* (159 Ill. App. 3d at 139, 511 N.E.2d at 1329), the trial court incorrectly allocated the burden of proof by requiring the defendants to rebut the officer's uncorroborated testimony that entrance into defendant's apartment was consensual. While it is true that when the State seeks to rely upon consent to justify the lawfulness of the search, it has the burden of proving that the consent was, in fact, freely and voluntarily given (*Bumper v. North Carolina* (1968), 391 U.S. 543, 548, 20 L. Ed. 2d 797, 802, 88 S. Ct. 1788, 1792; *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 248, 36 L. Ed. 2d 854, 875, 93 S. Ct. 2041, 2058), here, the State clearly met that burden on direct examination, and defendant's contrary testimony could be rejected by the court without a further showing by the State. See *Manikowski*, 186 Ill. App. 3d at 1011, 542 N.E.2d at 1151.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

WELCH and GOLDENHERSH, JJ., concur.