THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PAUL G. MEYER, Defendant-Appellant.

Fourth District   No. 4—82—0130

Opinion filed December 2, 1982.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield (Mark E. Allen, of Culbertson, Culbertson & Allen, of counsel), for appellant.

Lee J. Plummer, State's Attorney, of Jerseyville (Robert J. Biderman and Garry W. Bryan, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MILLS delivered the opinion of the court:

In short, we affirm the conviction.

But we must also reverse the sentence and remand for resentencing.

Meyer was charged with theft with a prior conviction. As he raises a question of the sufficiency of evidence, a rather exhaustive review of the testimony is mandatory.

### FACTS

In August of 1980, Meyer was employed at the Shop and Save grocery store in Jerseyville, Illinois. He was eventually promoted to assistant manager, the duties of which included opening and closing the store and generally making sure that all of the departments were running in the proper order. He had total access to the store—to the front door, the soda machines, and the safe.

Meyer had only two superiors in the store—Dale Bushor, the store manager, and Carolyn Delp, the front end manager. Delp normally was in charge of the soda machines in the store. Neither she nor Bushor consented to the removal of any money from the soda machines by the defendant. However, neither Bushor nor Delp was working in the store on the evening of June 29, 1981. Under such circumstances the assistant manager was in total charge of the operations of the store.

Bushor testified that around midnight on June 29, he and Officer Ralph Pickett were in Jersey County Motors across the street from the Shop and Save store attempting to observe the person or persons who had been taking money from the soda machines. From his posi-

tion, Bushor testified he could see the front of the store and observe the heads of persons moving about inside. He could also clearly see the foyer of the store where the soda machines were located. Meyer, as well as several other persons, were working on the night in question. At around 11:30 p.m., everyone but Meyer left.

At that time, Bushor stated that he saw Meyer go to the cigarette rack, to the front office, and to the soda machines. Meyer opened the doors to both machines, removed two cans of soda and the cash boxes, and returned to the office. He then went back to the machines, replaced the cash boxes, locked the machines, walked to the office, and proceeded out the main door of the store carrying a brown grocery bag.

Bushor testified that he and Pickett stopped Meyer on the sidewalk leading to the Shop and Save parking lot. Bushor asked to see the bag Meyer was carrying and Meyer consented—saying it was groceries or merchandise. The bag contained a loaf of bread, two cans of soda, a carton of cigarettes, and a brown bag full of change (nickels, dimes, and quarters), but no receipt. When Bushor asked Meyer about the money, he replied he was taking it home for safekeeping.

Bushor, Pickett, and Meyer then reentered the store through the door Meyer had exited. Once inside, a phone call was placed to the vice-president of the Shop and Save. Upon the order of the vice-president, defendant's employment was terminated and his keys were confiscated. About half an hour later, defendant left the store through the main door. (At no time had he mentioned a note taped to the door.)

Bushor testified that he counted the money in the bag seized from the defendant and found it to contain $108. Less than $40 was found in the soda machines.

Bushor further testified that he returned to the store at approximately 6 o'clock the next morning. He unlocked and entered the main door (the same one used the night before) and proceeded to the office—where he put the money taken from Meyer into another bag and placed that bag beneath the counter. Bushor then went to the back room of the store to have coffee. About the time he got his coffee, he received a phone call from the defendant, who asked if Bushor had seen the note. Bushor replied that he had not, but went to look and found a note where Meyer said it would be—on a metal bar at the bottom of the inside of the "In" door next to the "Out" door Bushor had used to gain entry to the store. The note read, "June 30. Dale, I took change out of soda machine. Will explain in the morning. Paul." Bushor testified that he had entered the store two times and had ex-

ited once before defendant's call.

Bushor also testified that when he entered the store on the morning of the 30th, he had to turn off the alarm. On cross-examination, it was established that the alarm is activated by keying in a four-digit number and locking the door. To deactivate the alarm, a person must key in the same four-digit number within a short period of time after entering the store. If the alarm is deactivated after regular business hours, the alarm company maintains a record and will check to see if entry is authorized.

Officer Pickett substantially corroborated the testimony of Bushor—indicating that when initially stopped, defendant said nothing about the money he was carrying and never mentioned a note. With the conclusion of Pickett's testimony, the State rested. Defendant's motion for directed verdict was denied.

Meyer then testified in his own behalf and admitted to prior convictions for theft and forgery. He also related his employment history at Shop and Save and indicated that his duties included watching for employee theft. He stated that approximately 12-18 months earlier he had apprehended an employee who was stealing beer and groceries. Defendant testified that he had also apprehended 27 shoplifters while working for Shop and Save.

Meyer's testimony as to his actions on the night in question was consistent with Bushor's observations. Meyer did testify that the groceries in his sack (with the exception of the sodas) had been purchased earlier by his wife. He also stated that he put a note on the "In" door as he left the store, and identified the note Bushor found as the one he had put on the door. Meyer did not know why the noted was dated June 30 when he wrote it on June 29, except that since it was night, he considered it the next day.

Meyer indicated that once he exited the store, Bushor and Pickett stopped him. He stated that when Bushor asked what was in the sack, he replied bread, soda, and cigarettes. Meyer also testified that he told Bushor that he had been informed by Carolyn Delp several weeks previous that money was missing from the soda machines. Defendant claimed that he had told Delp something ought to be done about it—as had been done with the beer incident. Defendant also claimed to have told John McGrath (the Shop and Save vice-president) the same thing.

Defendant admitted that he never mentioned the note that night and said that he called the next morning from a phone booth in Hardin. Defendant stated that he arrived at the store at 6:25 a.m. to pick up his personal belongings. Meyer also admitted that he took two so-

das from the machine without paying for them and that he had no plan to catch the person who was stealing money from the machine, that it was just a "thought."

In rebuttal, the State called Carolyn Delp, who denied any conversation with the defendant regarding the theft from the soda machines—and denied that defendant ever indicated to her a plan to catch the thief. On cross-examination, she admitted that it was possible that she had had such a conversation and could not remember it, but didn't think that was the case.

Upon this evidence, the jury returned a verdict of guilty. Meyer was found to be eligible for an extended term because of a prior forgery conviction. Noting that defendant had three times previously been convicted of stealing from his employer, the court sentenced Meyer to a term of six years' imprisonment.

### REASONABLE DOUBT

■ Meyer's first contention is that the State failed to prove his guilt beyond a reasonable doubt because his control over the money in question was not shown to be unauthorized and because his intent to permanently deprive was not established. The elements of intent and unauthorized control may—and often must be—proved by circumstantial evidence. (*People v. Falkner* (1978), 61 Ill. App. 3d 84, 377 N.E.2d 824; *People v. Bullock* (1970), 123 Ill. App. 2d 30, 259 N.E.2d 641.) Where a defendant has been convicted by a jury, a reviewing court should not lightly reverse the determination of guilt, but should carefully review the record to see if it is sufficient to create an abiding conviction of guilt. *People v. Hister* (1975), 60 Ill. 2d 567, 328 N.E.2d 531.

This record creates such a conviction. The evidence shows that while Meyer was an employee of Shop and Save with substantial responsibilities, he never had permission to remove money from the store's soda machines and take it home. And, while Meyer may have been obliged to stop theft from the store whenever possible, his actions were inconsistent with such a purpose. When first stopped, he did not acknowledge possession of the money. He admitted he had no plan to catch the thief, only a thought. He also admitted that he did steal two cans of soda from the store. Although Meyer disputed it, the State also presented evidence that Meyer never even informed anyone of his "thought" until after he had been accused of theft.

This would normally be sufficient to establish beyond a reasonable doubt the elements of unauthorized control and intent to permanently deprive. However, in this case, there is the note found inside the door

of the store in which Meyer admits to his superior that he took the money and has an explanation. This note is certainly inconsistent with an intent to permanently deprive—if it was written and placed inside the store *before* defendant was caught. Several facts show that this was not the case. First, defendant never mentioned the note when he was stopped. Second, though the note was apparently in a visible location and although defendant and Officer Pickett passed it twice and Dale Bushor passed it three times, neither saw the note. Third, the note was dated June 30, the day *after* defendant was caught. His explanation—that it was night and he considered it the next day—lacks credibility. Finally, there is the fact that defendant did not take all of the money from the machines. If he was really concerned about stopping theft, it is unclear how his actions would have furthered this purpose.

The question still remains as to how the note got inside the store if the defendant did not leave it as he walked out the door with the money. It is apparent that he could not have returned to the store after Bushor left, unlocked the door with a duplicate key and planted the note without there being some evidence of it. But, Meyer could have slipped the note inside the door after Bushor had opened the store at 6 a.m. on the 30th of June. Meyer could have then walked to a phone booth, called, waited until 6:25 a.m., and then walked into the store to collect his personal belongings. This is entirely consistent with Meyer failing to mention the note, with Bushor and Pickett not seeing it, and with the note being dated June 30.

It is true that a defendant need not present evidence to establish his innocence, but if he takes the stand, denies guilt and offers an improbable explanation for his actions, he does not thereby raise a reasonable doubt. (*People v. Delp* (1980), 85 Ill. App. 3d 463, 406 N.E.2d 903.) The jury could have reasonably disregarded the note and found defendant guilty. See *People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631 (holding that evidence was not so improbable as to raise a reasonable doubt and require reversal of defendant's conviction).

## SENTENCE

Meyer's second allegation of error is directed at his sentence. He argues that the court erred in imposing an extended term or, in the alternative, that it abused its discretion in sentencing him to a term of six years.

We hold that while an extended term was proper, the six-year term was improperly imposed. *People v. Hobbs* (1981), 86 Ill. 2d 242, 427 N.E.2d 558, is controlling.

*Hobbs* held that a court could not use one prior conviction to enhance a misdemeanor to a felony and also to impose an extended term. We interpret *Hobbs* to mean that once a prior conviction is used to turn a misdemeanor into a felony or impose an extended term, the usefulness for sentencing purposes is exhausted.

The trial judge here considered Meyer's prior felony theft conviction both to make his present misdemeanor offense a felony and also to impose a sentence of six years. This was improper. Thus, we affirm defendant's conviction, but reverse the imposition of a six-year sentence and remand to the trial court with directions to resentence Meyer without reference to his prior felony conviction for theft or his prior forgery conviction.

Affirmed in part; reversed in part and remanded with directions.

WEBBER, P.J., and TRAPP, J., concur.