THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LLOYD STEPTEAU, Defendant-Appellant.

First District (4th Division)   No. 84—838

Opinion filed April 3, 1986.

Michael A. Johnson, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Christopher J. Cummings, and Anna Demacopoulos, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE LINN delivered the opinion of the court:

The defendant, Lloyd Stepteau, and a codefendant, William Collier, were charged by information with the offense of theft. (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(a)(1).) After a jury trial, Collier was found not guilty. However, defendant Stepteau elected a bench trial. At the conclusion of that trial, he was found guilty and was then sentenced to a probationary term of 30 months. On appeal, defendant contends that the State failed to prove the *corpus delicti* of theft and that he was not proved guilty beyond a reasonable doubt of theft.

The following facts were adduced at trial: at 2:45 a.m. on December 28, 1982, the Oscar Mayer plant in Chicago was in the middle of its third work shift. Jim Brown was on duty at that time as shipping dock supervisor and codefendant Collier was a truckloader. As a truckloader, Collier's responsibilities consisted of gathering all the pallet loads of products for a particular consignment and placing them in

front of the assigned truck. That morning he was assigned to ready No. 3263 to be loaded on truck No. 382 which was to be driven by defendant.

Collier stated that he gathered pallets of goods that were consigned to load 3263 and in doing so collected 10 white load tickets and presented them to Brown. Those white tickets were to be matched with gold loading tickets which were in the supervisor's possession. If the white tickets matched the gold tickets, the supervisor would authorize the truckloader to load the truck. However, Brown testified that he received only nine white tickets from Collier which matched up with nine gold tickets. Brown then noticed 10 pallets of goods on the loading dock and subsequently observed Collier load those 10 pallets of products onto truck 382. Collier also stated that he loaded 10 pallets of products on that vehicle. Both witnesses agreed that there were some 20 boxes of bacon on the 10th pallet; the boxes contained a total of 480 one-pound packages that were loaded on the front right side of the truck next to a sliding door.

Once Collier was finished loading the truck, he made a diagram which reflected the location of nine pallets of goods that were loaded on the truck. Collier stated that the 10th pallet of goods would not be depicted on the diagram because it was handloaded onto the truck. Collier testified that the handstacked 10th pallet was for the fourth stop on defendant's route.

Once the truck was loaded, Brown took a photograph of the back of the truck as part of the company's standard procedure. The purpose of the photograph was to determine the number of remaining pallets. The photograph revealed boxes of bacon located at the front right portion of the truck.

After defendant's truck was locked and sealed, Brown telephoned Charles Mory, the plant manager, in order to report the incident. Brown informed Mory that he saw boxes of bacon being loaded onto defendant's truck even though they had not been ordered by a customer. Mory asked for all of the stops that defendant was to make that day, and Brown then gave Mory that information. In response Mory called Fred Moreno, a private detective, and instructed him to follow defendant's truck and to report any unauthorized stops.

In an unmarked vehicle Moreno followed defendant's truck. Defendant made his first three stops as scheduled and was at each stop for approximately 30 to 40 minutes. Defendant then made an unscheduled stop at Al's Liquor and Fresh Fruit Market. Moreno observed defendant's truck back up to the rear door of that establishment. He then watched the truck come to a stop behind the building,

and as defendant got out of the truck, he was met by a man who exited the rear door of the market. Moreno did not want any attention drawn to him so he drove around the block and got the exact address of the market and then positioned himself so that he could observe the truck yet not be seen by defendant. By the time he arrived at an observation point, defendant, however, was preparing to leave. Moreno estimated that defendant was at the market for approximately 10 minutes. Defendant then proceeded to the rest of his scheduled stops.

When defendant returned to the Oscar Mayer plant, he made out a shortage report. He was met on the dock by Sam Rizzo, a supervisor, and was told that Mory wanted to see him. Defendant then was escorted to an office by Sam Rizzo where he was met by Charles Mory, Frank Campanile and Bill Mayer. Mory began asking defendant some questions about the missing bacon, and in response defendant denied that he had taken anything. When Mory asked defendant why he was at Al's Liquor and Fresh Fruit Market, defendant failed to respond. After a pause, defendant stated that he was reading the newspaper there. Then Mory inquired as to why he was reading the newspaper in the alley behind the liquor store, and defendant stated that "that's where the bacon was." Mory asked defendant how much he had received for the bacon, and defendant told him that "he had not collected yet." Defendant then stated that he needed the money since it was after Christmas.

Defendant testified in his own behalf and stated that he never made an admission or confession in Mory's office. Defendant further stated that he had never stolen anything from the Oscar Mayer Company and that the reason he parked behind Al's Liquor and Fresh Fruit Market was because he wanted to check out some used tires for his van. He then decided to pull his truck around to the back and read his newspaper for a while. When he exited his truck, he noticed an individual sitting behind his truck drinking and decided to leave. However, defendant never mentioned this version during his meeting with Mory and the other Oscar Mayer officials. Defendant also stated that the minimum time to unload 20 cases of bacon would be approximately 15 minutes if he did not overexert himself.

Defendant also maintained that at one of his stops, some of the Oscar Mayer products had fallen over inside the truck and the dockworkers at that stop restacked and then offloaded all of the contents of the truck erroneously assuming that the entire load was for their stop alone. Upon discovering their error, defendant ordered them to reload the truck, but in the confusion and hurried pace of the busi-

ness, some products were sent "upstairs." It was also established that Detective Moreno saw no offloading of defendant's truck at Al's Liquor and Fresh Fruit Market. It was further established that no Oscar Mayer product was ever located or recovered from that location.

Defendant contends that the State's evidence, including evidence of his confession, was inadequate to establish the existence of a crime, or in the alternative, that it did not prove beyond a reasonable doubt that he committed the offense of theft.

■ A conviction based on a confession will be upheld if independent evidence shows that a crime did occur, and such evidence corroborates or bolsters defendant's confession. (*People v. Turner* (1984), 127 Ill. App. 3d 784, 789, 469 N.E.2d 368.) It is not necessary that the independent evidence prove beyond a reasonable doubt that the crime occurred; it need only tend to prove that an offense occurred and corroborate the facts contained in the confession. (*People v. Calhoun* (1984), 126 Ill. App. 3d 727, 738, 467 N.E.2d 1037.) If these two requirements are satisfied, the independent evidence, together with the confession, are sufficient to establish the *corpus delicti*. *People v. Calhoun* (1984), 126 Ill. App. 3d 727, 467 N.E.2d 1037; *People v. Neal* (1985), 111 Ill. 2d 180.

■ ■ Proof beyond a reasonable doubt does not require the exclusion of every possible doubt, and a conviction may be sustained on wholly circumstantial evidence, so long as the entire chain of circumstances leads to a reasonable and moral certainty that the accused committed the crime. (*People v. Cruz* (1984), 129 Ill. App. 3d 278, 286, 472 N.E.2d 175.) In a prosecution for theft, the elements of intent and unauthorized control may be proved by circumstantial evidence. (*People v. Meyer* (1982), 110 Ill. App. 3d 673, 677, 442 N.E.2d 957.) In addition, testimony of a defendant's admission is direct and not circumstantial evidence. See generally *People v. King* (1978), 58 Ill. App. 3d 199, 205, 373 N.E.2d 1045.

■ We believe, as did the trial court, that the chronology of events as established by the testimony of the stock supervisor leads to the conclusion that 10 pallets of products were loaded onto defendant's truck. Moreover, defendant made an extremely inculpatory statement to the effect that he left the stolen bacon at Al's Liquor and Fresh Fruit Market and that he was going to that location later in order to collect the money. Defendant also stated that he needed this money since it was just after christmas. In view of such evidence, we believe that the trial court properly concluded that defendant was guilty of theft.

■ Defendant contends that his confession should be given low

evidentiary value since it was not made with all the safeguards attached to a custodial interrogation by the police. However, confessions or admissions made in response to interrogations by private citizens are admissible even though the accused was not advised of his *Miranda* rights prior to making them. *People v. Hawkins* (1972), 53 Ill. 2d 181, 184-85, 290 N.E.2d 321.

■ Defendant was questioned by Charles Mory, the plant manager, during a session held in Mory's office. Present at that time were Sam Rizzo, Frank Companile and Bill Mayer. The purpose of that session was to determine what defendant knew about the missing bacon. No law enforcement officials were present at that meeting. After a series of questions, defendant confessed to leaving the bacon at Al's Liquor and Fresh Fruit Market. Defendant's confession was confirmed by Mory and William Mayer. They both agreed that defendant stated that he did not know how the bacon got on his truck but that once he discovered it, he took a chance and sold it. Both indicated that defendant had stated that he had left the bacon at the aforesaid location but had not, as of that time, received any money for it. In view of such testimony, we conclude that defendant's contention is without merit.

■ Defendant next contends that the *corpus delicti* cannot be proved by his confession alone. However, there was sufficient evidence, independent of defendant's confession, which tended to prove the existence of theft. As indicated above, the shipping supervisor testified that he received only nine white tickets for nine pallets of products. However, the supervisor observed 10 pallets of products being loaded onto defendant's truck. Collier, in fact, testified that he had loaded nine wooden pallets of products onto defendant's truck but then broke down another pallet load of products and handloaded it onto the truck, thereby actually loading 10 pallets of products. While Collier's diagram depicted only nine pallet loads, he stated that the handloaded pallet would not have been reflected on the diagram. Accordingly, we must conclude that there was no conflicting evidence as to the fact that an authorized 10th pallet load of products was placed onto defendant's truck.

In addition, Collier testified that the 10th pallet contained 24 or 25 boxes of bacon and that it was loaded on the front right side of the truck. The photograph, which was taken of the back of the truck, depicts 25 boxes of bacon on the right front portion of the truck. Therefore, all the evidence indicated that the bacon was on defendant's truck when it was sealed and readied for delivery.

Furthermore, Detective Moreno followed defendant's truck and

observed defendant make an unauthorized stop at Al's Liquor and Fresh Fruit Market. After backing the truck up to the back door of that establishment, defendant got out and was met by a man who came from the back door of the store. Detective Moreno could not observe defendant's activities in relation to the truck, but he stated that defendant was at the back of that store for approximately 10 minutes.

When defendant returned to the Oscar Mayer plant at the end of his route, he made out a shortage report, yet he did not report that he had about two dozen extra boxes of bacon on this truck which were not delivered. Since defendant left the plant with those boxes of bacon and returned without them, it is reasonable to infer that defendant exercised unauthorized control over the product and did not intent to return the bacon. Consequently, we must conclude that evidence independent of the confession demonstrates that the offense of theft did occur.

■ Defendant next maintains that since he testified as to his version of the events, he raised a reasonable hypothesis of innocence which the State failed to rebut. It is true that defendant need not present evidence to establish his innocence, but if he takes the stand, denies guilt and offers an improbable explanation for his actions, he does not thereby raise a reasonable doubt. *People v. Meyer* (1982), 110 Ill. App. 3d 673, 678, 442 N.E.2d 957.)

■ At trial, defendant maintained that he never knew that there were extra boxes of bacon on his truck. According to him, when he got to his second stop, employees on the loading dock began unloading the entire contents of the truck assuming that they were to receive the entire load. Defendant was then forced to check out what was to be delivered and what was to remain on the truck. He stated that he was not sure that these employees had replaced everything in order. Yet, when defendant got to his third stop, the pallet that was to be delivered at that location was completely intact. In addition, Collier testified that the delivery for the fourth stop was loaded on the front side of the truck right next to the sliding door. The photograph taken by the supervisor also depicts the bacon in that position. Defendant claims that he stopped at the liquor store in order to check some used tires and drove to the rear of the store and backed his truck up to the rear door. He also claimed that he stopped there to read a newspaper, but decided to leave when he saw someone drinking near his truck. However, when defendant was questioned by Mory, he never mentioned the fact that he was looking for used tires. After having carefully examined defendant's version of these events at trial, we find that version is palpably unbelievable.

For the reasons stated above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JOHNSON and McMORROW, JJ., concur.