THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JAMES PATRICK MANIKOWSKI *et al.*, Defendants-Appellees.

Fifth District   No. 5—87—0823

Opinion filed July 27, 1989.

Mark C. Hunter, State's Attorney, of Metropolis (Kenneth R. Boyle, Stephen E. Norris, and Matthew E. Franklin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Joseph Jay Jackson, of Metropolis, for appellee James Patrick Manikowski.

Daniel M. Kirwan, of State Appellate Defender's Office, of Mt. Vernon, and Lori L. Mosby, of State Appellate Defender's Office, of Springfield, for appellee Allan Bernard Manikowski.

JUSTICE RARICK delivered the opinion of the court:

The State appeals from the decision of the circuit court of Massac County granting the motions of defendants, James Patrick and Allan Bernard Manikowski, to suppress evidence in connection with their charges of unlawful possession of a controlled substance and unlawful delivery of a controlled substance. We reverse.

On June 28, 1987, defendants were en route from Ft. Lauderdale, Florida, to Chicago, Illinois, pursuant to a drive-away contract. Just across the Illinois border, defendants were stopped by the State police for traveling 70 to 75 miles per hour in a 65-miles-per-hour zone. Allan was driving the car. Upon running a check of defendants' identifications, the troopers learned both defendants had criminal arrest records for narcotics. Because both defendants appeared to be nervous, the troopers asked if the vehicle contained any firearms or drugs. Allan replied no. The troopers then asked to search the vehicle and its contents. The troopers testified both defendants gave verbal permission and Allan signed a written consent form. Both defendants denied any such consent at the suppression hearing. The troopers proceeded to search the car when they learned bad weather was approaching. They asked defendants to drive to a police weigh station some 40 miles up the road in order to finish the search undercover. En route, the troopers signaled defendants to turn off at a garage in Vienna, in Johnson County, approximately 20 miles away from the initial stop. Additional troopers and a canine unit met defendants there. Continued search of the car produced a shaving kit underneath the left front

wheel well. The shaving kit contained a clear plastic bag with gray duct tape around it which appeared to contain rice and a white substance. The white substance subsequently was identified as cocaine. Both defendants filed motions to quash their arrests and to suppress the evidence stemming from the search of the car. The trial court granted defendants' motions to suppress, finding that the troopers did not have valid consent to search the auto at the garage in Vienna.

The State first argues on appeal the trial court erred in granting James' motion to suppress. The State believes James lacked standing to raise the issue of whether the search was proper because he had no reasonable expectation of privacy in the drive-away car in which he was riding. We agree with the State's contention.

■■■ A person who has been aggrieved by an illegal search and seizure and the subsequent introduction of damaging evidence secured by a search of a third person's premises or property has no "standing" to claim any infringement of his fourth amendment rights unless he had a legitimate expectation of privacy in the invaded place. (See *Rakas v. Illinois* (1978), 439 U.S. 128, 135, 144, 58 L. Ed. 2d 387, 396, 402, 99 S. Ct. 421, 426, 431. See also *United States v. Salvucci* (1980), 448 U.S. 83, 96, 65 L. Ed. 2d 619, 631, 100 S. Ct. 2547, 2555; *People v. Thomas* (1980), 89 Ill. App. 3d 592, 595, 411 N.E.2d 1076, 1079-80.) James had no property or possessory interest in the car, was not driving the car when stopped by the troopers, and even though he had paid half of the traveling expenses and had personal items in the car, was not even listed as a potential passenger on the drive-away contract. As such, regardless of whether contributions to expenses had been made or not, James had no reasonable expectation of privacy in the left wheel well of the car. Consequently, James also had no "standing" to challenge the search. (See *People v. Mezo* (1988), 170 Ill. App. 3d 679, 681, 525 N.E.2d 134, 135; *People v. Carlton* (1985), 133 Ill. App. 3d 1061, 1064, 479 N.E.2d 1178, 1180; *People v. Flowers* (1982), 111 Ill. App. 3d 348, 353, 444 N.E.2d 242, 246; *People v. Norris* (1981), 101 Ill. App. 3d 664, 668-69, 428 N.E.2d 987, 990-91. See also *Rakas*, 439 U.S. at 149-50, 58 L. Ed. 2d at 405, 99 S. Ct. at 433-34.) The trial court erred in holding otherwise, and James' motion to suppress should have been denied.

■■ James argues, however, the totality of the police conduct amounted to an unlawful seizure of his person in violation of his fourth amendment rights, thereby conferring standing upon him for yet another reason. (See *People v. Kunath* (1981), 99 Ill. App. 3d 201, 205, 425 N.E.2d 486, 489-90.) This argument ignores the fact that the car in which he was riding was stopped for speeding. A traffic viola-

tion provides more than a reasonable basis for stopping a vehicle. (See *Flowers,* 111 Ill. App. 3d at 354, 444 N.E.2d at 247.) Likewise, an officer's request to produce identification is not unreasonable, nor does it constitute a fourth amendment seizure. (See *People v. Long* (1983), 99 Ill. 2d 219, 229-30, 457 N.E.2d 1252, 1256.) More importantly, however, neither defendant's freedom of movement was restricted. No guns were drawn, no handcuffs were used. One of the troopers testified defendants could have left at any time once the warning ticket had been issued. The narcotics supervisor who met defendants at the garage in Vienna testified he told defendants they were not under arrest and they could go off and eat at a restaurant across the street if they so desired. There simply was no unlawful arrest or seizure of either defendant in this instance. (See *United States v. Mendenhall* (1980), 446 U.S. 544, 555-56, 64 L. Ed. 2d 497, 510, 100 S. Ct. 1870, 1877-78; *Long,* 99 Ill. 2d at 231, 457 N.E.2d at 1257. *Cf. Florida v. Royer* (1983), 460 U.S. 491, 502-03, 75 L. Ed. 2d 229, 239-40, 103 S. Ct. 1319, 1326-27; *People v. Wiseman* (1974), 59 Ill. 2d 45, 50, 319 N.E.2d 225, 227; *People v. Reynolds* (1981), 101 Ill. App. 3d 576, 579, 428 N.E.2d 694, 696.) Consequently, any argument that the cocaine should have been suppressed as the "fruit" of an illegal arrest is also without merit. Moreover, the search which produced the cocaine was based upon a valid written consent, unrelated to any possible illegal arrest. See *People v. Brumfield* (1981), 100 Ill. App. 3d 382, 387-88, 426 N.E.2d 1012, 1016-17.

The State next finds fault with the trial court's ruling that the search conducted at the garage in Vienna exceeded the scope of Allan's written consent to search. The State contends the troopers made only one continuous search within the scope of consent given which neither defendant ever withdrew. Again we must agree with the State.

Allan, as driver of the car, signed a blanket comprehensive written consent form allowing the troopers to search the car in which defendants were riding as well as its contents. At no time was this consent ever withdrawn or limited. While both defendants denied giving their consent and Allan denied signing the consent form, credibility is an issue for the trier of fact which we will not disturb on review. (See, *e.g., People v. Clark* (1982), 92 Ill. 2d 96, 99, 440 N.E.2d 869, 871.) The trial court here specifically found Allan gave the troopers valid written consent to search the auto. The trial court ruled only the search at the garage in Vienna exceeded the scope of that consent.

A consent to search which is unlimited as to time and num-

ber of searches must be judged under a rule of reason. (*People v. Shelton* (1982), 110 Ill. App. 3d 625, 629, 442 N.E.2d 928, 932.) Generally, a consent to search is given with the understanding that the search will be conducted forthwith and that only a single search will be made. Under appropriate circumstances, however, second or subsequent searches are acceptable. (See *People v. Wilson* (1985), 133 Ill. App. 3d 265, 271-72, 478 N.E.2d 561, 566; *People v. Lee* (1981), 93 Ill. App. 3d 894, 896-97, 417 N.E.2d 1090, 1092.) We need not concern ourselves with the latter situation in this instance, for we find the search conducted at the garage in Vienna to be part of one continuous search. The search began on the highway at the site of the initial traffic violation stop, was suspended temporarily because of approaching bad weather, and was finished at the garage in Vienna. There were not two separate searches here, only one, albeit interrupted. The troopers simply had not completed their search when forced to stop because of circumstances beyond their control, *i.e.*, approaching bad weather. The troopers' decision to move the site of the search was not unreasonable under such circumstances, and in fact, was for the protection of all involved. Moreover, an auto which could have been properly searched on a highway can be searched as well without a warrant at a police station or garage. (See *Wiseman*, 59 Ill. 2d at 48-49, 319 N.E.2d at 226-27; *People v. Canaday* (1971), 49 Ill. 2d 416, 421, 275 N.E.2d 356, 359.) The object of the search in this instance never changed, only the location. Even this did not inconvenience defendants as the garage in Vienna was on their way to Chicago. More importantly, defendants never withdrew or limited the consent to search the car and its contents. This was also true after defendants learned a canine unit was on its way to meet them. We further note that in general the use of a trained narcotics dog is viewed as inoffensive to an individual's rights. (See *People v. Campbell* (1977), 67 Ill. 2d 308, 317, 367 N.E.2d 949, 953-54.) We therefore find the search begun on the highway and concluded at a garage in Vienna was both reasonable and within the scope of the written consent to search. We accordingly reverse the decision of the trial court suppressing the cocaine seized from defendants pursuant to a valid search of the car in which they were riding.

■■ ■ As for defendants' arguments that a copying error in the vehicle identification number rendered the consent to search form invalid and that the officers had no authority to open the shaving kit once found are specious at best. The car was correctly described by color, make, year, body style and license number so as to identify sufficiently the object to be searched. Any misdescription as to the vehi-

cle number therefore was harmless. (See *People v. Laws* (1972), 7 Ill. App. 3d 826, 827-28, 288 N.E.2d 890, 891.) In addition, the consent form specifically authorized search of luggage and contents of the car, thereby permitting the officers to look into the shaving kit. In any event, once the shaving kit was found, its location and peculiar packaging provided sufficient probable cause to open and search its contents. See *Texas v. Brown* (1983), 460 U.S. 730, 743-44, 75 L. Ed. 2d 502, 514-15, 103 S. Ct. 1535, 1543-44.

For the aforementioned reasons, we reverse the order of the circuit court of Massac County and remand for further proceedings.

Reversed and remanded.

WELCH, P.J., and HARRISON, J., concur.