THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
JUAN BOLAR, Defendant-Appellee.

Third District No. 3—90—0258

Opinion filed November 30, 1990.

STOUDER, J., dissenting.

William Herzog, State's Attorney, of Kankakee (Rita Kennedy Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Leonard Sacks, of Kankakee, for appellee.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:
The State charged the defendant, Juan Bolar, with unlawful possession of a controlled substance and unlawful possession of a controlled substance with the intent to deliver (Ill. Rev. Stat. 1989, ch. 56½, pars. 1402(a)(2), 1401(a)(2)). The defendant subsequently moved to suppress evidence gained from a search of the car he was riding in when arrested. The court granted the motion, and the State filed the instant appeal.

At the defendant's bench trial, Officer Robert Bodemer testified that on March 21, 1989, around 9 p.m., he observed a gray Pontiac with

tinted front side windows traveling on Illinois Route 57. Since vehicles made after 1982 could not have tinted windows, he requested a computer check to determine the year of the car's manufacture. The check revealed that the car was a 1984 Pontiac registered to Rodney Wallace.

Officer Bodemer then stopped the vehicle. He noted that two people sat in the front seat and one person sat in the back seat. The officer told the driver that his windows were illegal and asked to see his license. The driver did not have his license with him, but identified himself as Rodney Wallace.

Officer Bodemer further testified that the defendant sat in the front passenger seat. As Bodemer spoke to the driver, the defendant shifted in his seat and looked directly ahead. He then picked up some food scraps and placed them in a Kentucky Fried Chicken box.

After the officer issued a warning ticket to Wallace for illegal windows, he asked Wallace if he had any stolen property, weapons, or narcotics in his vehicle. The defendant leaned over and whispered something to Wallace. Wallace said that he did not have any illegal items in his car and agreed to let the officer search his vehicle.

Officer Bodemer asked all three persons to exit the vehicle. Before exiting, the defendant placed the Kentucky Fried Chicken box in an open paper sack standing on the floorboard at his feet. Wallace then signed a consent form authorizing the search of his vehicle and its contents.

The officer took the chicken box out of the sack and noted that inside it were chicken bones, food scraps, and paper. He also noted that the sack contained a cheese ball canister, a lemonade mix canister, and a receipt. The receipt stated that it was for the purchase of two cans at a price of $35.98 each from Jimmy's Record and Variety Shop in Chicago. When he shook the cheese ball canister, it did not feel like it had cheese balls in it. He then opened the canister, removed some cheese balls, and saw an opaque plastic container in the bottom half of the can. Inside the container there appeared to be two white round objects.

When he walked over to the three occupants and asked them what was in the sack, the defendant said that it contained groceries. Bodemer radioed for a canine unit to be sent to the scene and resumed the search. Under the back passenger seat he found a hand-rolled cigarette that smelled like cannabis.

After the police dog arrived, it indicated that narcotics were inside the cheese ball canister. Officer Bodemer unscrewed the bottom of the canister and saw two plastic baggies containing a white chunky substance. The lemonade mix canister also had a false bottom, but it was empty.

Bodemer subsequently arrested the defendant. Another officer searched him and found $1,294.99 in the defendant's pocket.

A forensic scientist testified that one of the baggies contained 27.89 grams of a substance that was 94.8% cocaine. The other bag contained 27.65 grams of a substance which, according to preliminary tests, contained cocaine.

During Officer Bodemer's testimony, defense counsel orally moved to suppress the results of the search. Following the conclusion of the hearing, the trial court suppressed the evidence in the sack, finding that the search violated the fourth amendment.

On appeal, the State contends that the court erred for three alternative reasons: (1) the defendant lacked standing to challenge the search; (2) Wallace consented to the search; and (3) the police had probable cause to search for drugs.

■ We note that a trial court's ruling on a motion to suppress will not be reversed unless it was manifestly erroneous. (*People v. Ingram* (1986), 143 Ill. App. 3d 1083, 494 N.E.2d 148.) We also note, however, that a passenger lacks standing to challenge the search of another's car unless the passenger had a legitimate expectation of privacy in the place searched. *Rakas v. Illinois* (1978), 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421.

■ The uncontroverted evidence established that Wallace, the driver and owner of the vehicle, consented to a search of the car and its contents. The sack was open and standing in plain view. Moreover, the defendant did not assert a possessory interest in the sack or its contents. Consequently, we find that he did not have a legitimate expectation of privacy in the sack and thus lacked standing to challenge the search. (See *People v. Manikowski* (1989), 186 Ill. App. 3d 1007, 542 N.E.2d 1148; *People v. Carlton* (1985), 133 Ill. App. 3d 1061, 479 N.E.2d 1178.) We therefore conclude that the trial court's ruling that the search violated the fourth amendment was manifestly erroneous.

Our resolution of this issue renders moot the State's other arguments. We reverse the order of the circuit court of Kankakee County suppressing the use of the sack's contents as evidence and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded.

GORMAN, J., concurs.

JUSTICE STOUDER, dissenting:
In the instant case, the appropriate question is whether the chal-

lenged search violated the fourth amendment rights of the defendant. The capacity to claim the protection of the fourth amendment depends not upon a property right in the invaded place, but upon whether the person who claims the protection of the amendment has a legitimate expectation of privacy in the invaded place. (*Rakas v. Illinois* (1978), 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421, citing *Katz v. United States* (1967), 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507.) The resolution of this issue turns on a factual determination. Findings of fact in connection with a motion to suppress evidence will not be overturned by a reviewing court unless manifestly erroneous. *People v. Conner* (1979), 78 Ill. 2d 525, 401 N.E.2d 513.

In the instant case, the trial court correctly found that the defendant had a legitimate expectation of privacy in the sack. In connection with a concurrent motion for a directed finding, the court found "ample evidence of the defendant's possession, control and knowledge." The trial court noted that the sack was between the defendant's feet, that the defendant placed his dinner refuse in the sack, and that it was the defendant who responded to the officer's inquiry into the sack's contents. This was more than an adequate showing that the sack and its contents did not belong to the driver and that the defendant had a possessory interest in the sack and an expectation of privacy separate from that of the driver. The trial court concluded that Trooper Bodemer was interested in the contents of defendant's sack and not the vehicle. However, instead of obtaining the defendant's consent to a search of the sack, he obtained the driver's permission to search the vehicle and ordered the driver and passengers out of the car. The fact that the defendant left the sack in the vehicle when he was ordered out by the State trooper does not diminish or eviscerate the defendant's legitimate expectation of privacy in the contents of the sack. There was no showing that the contents of the sack were in plain view or that the trooper had probable cause to search the sack.

Under the circumstances, the defendant had a legitimate expectation of privacy in the contents of the sack. The trial court's determination that the search was a violation of the defendant's fourth amendment rights was not manifestly erroneous. Therefore, I believe the judgment should be affirmed.