THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JUAN BOLAR, Defendant-Appellant.

Third District   No. 3—91—0231

Opinion filed June 2, 1992.

Verlin R. Meinz, of State Appellate Defender's Office, of Ottawa, for appellant.

William Herzog, State's Attorney, of Kankakee, and Robert S. O'Shea, of Springfield (John X. Breslin, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCUSKEY delivered the opinion of the court:

The trial court initially granted defendant Juan Bolar's motion to suppress evidence seized by the police. The State appealed, and this court reversed the trial court's decision. (*People v. Bolar* (1990), 205 Ill. App. 3d 597, 563 N.E.2d 1225) (*Bolar I*). On remand, the trial court convicted the defendant of unlawful possession of a controlled substance with the intent to deliver and unlawful possession of a controlled substance (Ill. Rev. Stat. 1989, ch. 56½, pars. 1401, 1402). Thereafter, the court sentenced him to an eight-year term of imprisonment for the possession with intent to deliver charge. No sentence was entered on the unlawful possession conviction. He appeals. We affirm the conviction for unlawful possession of a controlled substance with intent to deliver and vacate the conviction for unlawful possession. For reasons which follow, we remand for resentencing.

The record shows that at Bolar's trial, Officer Robert Bodemer testified that on March 21, 1989, around 9 p.m., he observed a gray Pontiac with tinted front side windows traveling on Illinois Route 57. Since vehicles made after 1982 could not have tinted windows, he requested a computer check to determine the year of the car's manufacture. The check revealed the car was a 1984 Pontiac registered to Rodney Wallace.

Officer Bodemer then stopped the vehicle. He noted two people sat in the front seat and one person sat in the back seat. The officer told the driver that his windows were illegal and asked to see his license. The driver did not have his license with him, but identified himself as Rodney Wallace.

Officer Bodemer further testified that the defendant sat in the front passenger seat. As Bodemer spoke to the driver, the defendant shifted in his seat and looked directly ahead. He then picked up some food scraps and placed them in a Kentucky Fried Chicken box.

After the officer issued a warning ticket to Wallace for illegal windows, he asked Wallace if he had any stolen property, weapons, or narcotics in his vehicle. The defendant leaned over and whispered something to Wallace. Wallace said he did not have any illegal items in his car and agreed to let the officer search his vehicle.

Officer Bodemer asked all three persons to exit the vehicle. Before exiting, the defendant placed the Kentucky Fried Chicken box in

an open paper sack standing on the floorboard at his feet. Wallace then signed a consent form authorizing the search of his vehicle and its contents.

The officer took the chicken box out of the sack and noted inside it were chicken bones, food scraps, and paper. He also noted the sack contained a cheese ball canister, a lemonade mix canister, and a receipt. The receipt recorded the purchase of two cans at a price of $35.98 each from Jimmy's Record and Variety Shop in Chicago. When he shook the cheese ball canister, it did not feel like it had cheese balls inside. The officer then opened the canister, removed some cheese balls, and saw an opaque plastic container in the bottom half of the can. Inside the container there appeared to be two white round objects.

When Office Bodemer walked over to the three occupants and asked them what was in the sack, the defendant said that it contained groceries. Bodemer then radioed for a canine unit to be sent to the scene and resumed the search. Under the back passenger seat the officer found a hand-rolled cigarette that smelled like cannabis.

After the police dog arrived, the dog indicated that narcotics were inside the cheese ball canister. Officer Bodemer unscrewed the bottom of the canister and saw two plastic baggies containing a white chunky substance. The lemonade mix canister also had a false bottom, but it was empty. Bodemer subsequently arrested Bolar. Another officer searched the defendant and found $1,294.99 in his pocket.

A forensic scientist testified one of the baggies contained 27.89 grams of a substance that was 94.8% cocaine. The other bag contained 27.65 grams of a substance which, according to preliminary tests, contained cocaine.

On appeal, the defendant first argues that he was not proven guilty beyond a reasonable doubt. Specifically, he contends the State failed to show that he had actual or constructive possession of the cocaine. The defendant states that in analyzing the evidence, this court must first begin by noting its prior decision in this case.

In *Bolar I*, we reversed the trial court's suppression order, based upon our finding that the defendant lacked standing to challenge the search of the bag and the two canisters. The defendant acknowledges that a finding of a lack of standing is not equivalent to a finding of lack of possession. (See *United States v. Salvucci* (1980), 448 U.S. 83, 65 L. Ed. 2d 619, 100 S. Ct. 2547.) Nonetheless, he argues that our holding in *Bolar I* called into question the strength of the State's case regarding possession. While we agree with the defendant that an analysis of one's standing involves a consideration

of a defendant's possessory interest in the item searched, we disagree that our decision in *Bolar I* called into question the strength of the State's case regarding possession.

*Bolar I* involved a question of whether the defendant's fourth amendment rights were violated. In finding that his rights were not violated, this court noted:

> "The uncontroverted evidence established that Wallace, the driver and owner of the vehicle, consented to a search of the car and its contents. The sack was open and standing in plain view. Moreover, the defendant did not assert a possessory interest in the sack or its contents." (*Bolar*, 205 Ill. App. 3d at 599, 563 N.E.2d at 1227.)

Consequently, we found in *Bolar I* that the defendant did not have a legitimate expectation of privacy in the sack and therefore lacked standing to challenge the search.

Contrary to the defendant's contention on appeal, our analysis in *Bolar I* involved possession *only* as it related to his rights under the fourth amendment. It did *not* involve an analysis of the strength of the State's case regarding his possession of the cocaine. We now turn to the evidence in the instant appeal to determine whether it is sufficient to support the trial court's finding that the defendant was guilty beyond a reasonable doubt of the elements of possession.

To support a conviction for unlawful possession of a controlled substance, the State must prove that the defendant had knowledge of the substance and that it was under his immediate and exclusive control. (*People v. Strong* (1986), 151 Ill. App. 3d 28, 502 N.E.2d 744.) However, the defendant's possession of a controlled substance may also be constructive. Additionally, the rule that possession must be exclusive does not mean that possession may not be joint. (*People v. Burke* (1985), 136 Ill. App. 3d 593, 483 N.E.2d 674.) Constructive possession of a controlled substance exists without the defendant's actual personal present dominion over the controlled substance when the defendant has the intent and capability to maintain control and dominion over it. *People v. Scott* (1987), 152 Ill. App. 3d 868, 505 N.E.2d 42.

When presented with a challenge to the sufficiency of the evidence, the relevant question is whether, when reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267; *People v. Pintos* (1989), 133 Ill. 2d 286, 549 N.E.2d 344.) Proof beyond a reasonable doubt does *not* require the exclusion of

every possible doubt. When the entire chain of circumstances leads to a reasonable certainty that the accused committed the crime, the judgment must be upheld. *People v. Stepteau* (1986), 142 Ill. App. 3d 400, 491 N.E.2d 821.

■ Based upon our review of the evidence, we conclude that a rational trier of fact could have found the defendant guilty as charged. The State presented sufficient evidence establishing the defendant's possession of the cocaine. The record shows the sack was between the defendant's feet and that he placed his dinner refuse in the sack. In addition, we note that it was the defendant who responded to the officer's inquiry concerning the sack's contents. We need not discuss the intent to deliver element since the defendant is not contesting it.

■ The defendant next argues that this court should vacate his conviction for possession of a controlled substance. He contends, and the State agrees, that under *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1, it is error to permit a bare conviction to stand in a "one act, one crime" situation. It is well-settled law that multiple convictions based upon the same physical act cannot stand. (*People v. Ellis* (1986), 143 Ill. App. 3d 892, 493 N.E.2d 739.) Because we have now affirmed the defendant's conviction for unlawful possession of a controlled substance with intent to deliver, we must, under the "one act, one crime" rule, vacate the defendant's conviction for unlawful possession of a controlled substance.

■ The defendant next argues that this cause should be remanded for resentencing in the event we reverse the defendant's prior conviction in a companion case because the trial court relied on that conviction in sentencing him to an eight-year term of imprisonment. (*People v. Bolar* (1992), 229 Ill. App. 3d 560.) (*Bolar II*). The State agrees that a conviction overturned on appeal cannot be considered as a factor in sentencing.

In the instant appeal, the record shows that the trial court in the case at hand did in fact consider the defendant's prior conviction. We further note the defendant's prior conviction was reversed in *Bolar II*, which was decided May 22, 1992 (229 Ill. App. 3d 560). Our holding in *Bolar II* now requires us to remand this cause for resentencing. See *People v. Burnside* (1991), 212 Ill. App. 3d 605, 571 N.E.2d 487.

■ Finally, the defendant argues that remandment is also necessary for a calculation and clarification of his time credit and fine credit. The State does not disagree. We find the trial court to be in the best position to determine what credits the defendant is entitled to. We agree with both parties that remandment for such calculations

is necessary. Accordingly, on remand, the trial court is directed to calculate the defendant's time credit against his sentence and also to calculate his monetary credit against his street-value fine.

The judgment of the circuit court of Kankakee County is affirmed in part, vacated in part, and remanded for proceedings consistent with our decision.

Affirmed in part; vacated in part and remanded.

HAASE and STOUDER, JJ., concur.